Isaiah CHRISTMAS, Appellant,

v.

KINDRED NURSING CENTERS LIM-
ITED PARTNERSHIP d/b/a Windsor
Estates Health and Rehabilitation
Center, Appellee.

No. 34A05–1101–CT–1.

Court of Appeals of Indiana.

Sept. 7, 2011.

Matthew M. Golitko, Jared A. Harts, Golitko Daly, Kokomo, IN, Attorneys for Appellant.

Libby Y. Goodknight, Bryan S. Strawbridge, Krieg DeVault LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Isaiah Christmas ("Christmas") appeals the trial court's grant of summary judgment in favor of Kindred Nursing Centers, Limited Partnership d/b/a Windsor Estates and Rehabilitation Center ("Windsor").

We reverse and remand.

### ISSUES

1. Whether the trial court erred in not holding a hearing on Windsor's summary judgment motion.

2. Whether the trial court erred in granting summary judgment.

## FACTS

Christmas is a Howard County home detention officer who makes unannounced visits to detainees who are on house arrest but are allowed to work outside their homes and to engage in other approved activities. As a home detention officer, Christmas can make visits at the time and location of his choosing. He can "check on [the detainee] anytime/anywhere," such as the detainee's residence, place of employment, church, doctor's office, and/or Alcoholics Anonymous meetings. (Christmas's App. 65–66). Officers are not required to make visits to the detainees' places of employment, but they can do so if the detainees' employers "don't mind." (Christmas's App. 66).

During the daylight hours of February 22, 2007, Christmas visited one of his detainees at Windsor, her place of employment. In its mission statement, Windsor describes itself as "a provider of post-acute health care services with a stated mission of striving to promote healing, provide hope, preserve dignity and produce value for each patient, resident, family member, customer, employee and shareholder it serves." (Christmas's App. 8).

Although Christmas was not required to visit the detainee at Windsor, he did so because he was already in the neighborhood. He had visited the detainee at Windsor on prior occasions and an unidentified person had provided him with the access code to an employee-only entrance. The detainee was required as a condition of her house arrest to inform Windsor of her detainee status and of the possibility of a visit from a home detention officer, although there is no evidence to indicate whether she did so. Windsor, however, was not required to give permission to the home detention officer to enter the premises.

While Christmas walked toward the building from the adjacent parking lot, he slipped and fell on a concrete path. Christmas saw snow on the sidewalk as he was approaching the facility and observed that the "snow had begun to melt on the walk, so a section of the walk looked like it was melted snow." (Christmas's App. 13). Christmas stepped into the melting snow and water on this section of the sidewalk near the building, slipped, and fell. Christmas testified at his deposition that what he thought was water on the sidewalk turned out to be ice and that he slipped on the ice.

At the time of the fall, Christmas intended to access Windsor through the employee entrance. Christmas's supervisor testified at his deposition that he did not want home detention officers "to have a code to get into any business" and that he would discourage a home detention officer from using a code to access the premises of a detainee's place of employment "by every means possible." (Christmas's App. 68). Christmas's supervisor did not know that Christmas had obtained an access code to the employee entrance at Windsor. However, there was no official policy against having the code.

After getting up from the fall, Christmas entered Windsor through the employee entrance and talked for five minutes to the detainee. He then left the building and proceeded to visit a detainee who lived in the housing complex next door to Windsor. Christmas photographed the area approximately twenty minutes after the fall and testified at his deposition that he saw what appeared to be salt on the ground in the general area of where he fell.

■ On February 5, 2009, Christmas filed a complaint against Windsor, claiming injuries and alleging negligent maintenance of the sidewalk.[1] Specifically, he alleged:

---

1. The exclusivity provision of the Worker's Compensation Act does not bar tort claims by

1. That on or about the 22nd day of February, 2007, Plaintiff was an invitee of the Defendant's establishment. . . .

2. That Plaintiff herein was walking on the handicap sloped sidewalk when he slipped on the ice and fell, causing injury to his back.

3. That Defendant was negligent in that it failed to properly maintain its sidewalk.

4. That as a proximate result of the negligence of the Defendant, Plaintiff suffered injury to his person.

5. That Plaintiff has suffered pain, discomfort and medical expenses, all as the proximate result of the negligence of the Defendant.

(Christmas's App. 6).

On July 26, 2010, Windsor filed its motion for summary judgment, and soon thereafter, the trial court set a hearing on the motion for October 28, 2010. On October 27, 2010, the trial court cancelled the hearing and notified counsel by telephone that it would rule on the motion for summary judgment based upon the parties' briefs and designated evidence. On November 5, 2010, nine days after canceling the hearing, the trial court entered summary judgment in favor of Windsor. The trial court stated:

The Plaintiff admits there are no material facts in dispute (see pg. 1 of Plaintiff's response). The Court agrees with this conclusion. Accordingly, it is up to the Court to determine the law applicable to those facts.

The Plaintiff was not an invitee. Apparently, he did not follow the procedure of his employer when visiting the Defendant's nursing home; there is no allega-

tion that he obtained permission before checking on a detainee. Furthermore, he was using an emergency exit which, had the facility known he was doing so, he would have been barred from so doing. Therefore, the Court determines Plaintiff was a licensee.

As such, no duty was owed the Plaintiff by Defendant, unless it knew, or should have known, of a latent defect, in which case it had a duty to warn. Here, there was no latent defect.

(Christmas's App. 87).

Christmas subsequently filed his "Plaintiff's Motion To Correct Error And Request For Hearing," which stated in pertinent part:

1. Defendant filed its Motion for Summary Judgment on July 26, 2010.

2. On July 30, 2010, the Court scheduled Defendant's motion for hearing on October 28, 2010.

3. Plaintiff timely filed his response on September 29, 2010. At the time of Plaintiff's response the court had already scheduled Defendant's motion for hearing. Accordingly, Plaintiff did not request a hearing because such a request would be redundant.

4. On October 27, 2010, the day before the scheduled Summary Judgment Hearing, the Court canceled the hearing and by Order dated November 5, 2010, granted Defendant's Motion for Summary Judgment without holding a hearing.

5. Plaintiff requests that the following errors be corrected:

(a) The Court incorrectly concluded that Defendant owed no duty to Plaintiff. In support of this position Plaintiff incorporates by reference, his Response

an employee against third parties who are not the employer or a co-employee of the injured party. Ind.Code § 22–3–2–13; *Williams v.*

*R.H. Marlin, Inc.,* 656 N.E.2d 1145, 1150 (Ind.Ct.App.1995).

and Brief in Opposition to Defendant's Motion for Summary Judgment and corresponding Designation of Evidence. Plaintiff requests that the court deny Defendant's Motion for Summary Judgment.

(b) The Plaintiff is entitled to a hearing on Defendant's Motion for Summary Judgment and the Court erred in canceling the hearing. Indiana Rule of Trial Procedure 56(C) requires that the court hold a hearing if requested by the parties. In this case the court set a hearing on Defendant's Motion almost immediately after the Motion was filed and long before Plaintiff's response was due. Given that the matter was already set for hearing, Plaintiff did not specifically request a hearing because such request would have been redundant. Plaintiff is entitled to a hearing and the Court erred when it cancelled the hearing. Accordingly, the Plaintiff requests that this matter be set for hearing.

(Christmas's App. 89–90).

On December 6, 2010, the trial court summarily denied Christmas's motion to correct error and his request for hearing. Christmas now appeals.

### DECISION

1. *Necessity of a Hearing*

■ Christmas contends that the trial court erred on procedural grounds when it removed the motion for summary judgment hearing from its docket and entered summary judgment without a hearing. He argues that the trial court's procedure deprived him of a right to a hearing on Windsor's motion for summary judgment. He notes that while Indiana Trial Rule 56(C) no longer contains an absolute requirement that the trial court set a hearing on every motion for summary judgment, the rule does preserve the right to a

hearing upon request made by a party "no later than ten (10) days after the response was filed or due...." Christmas states that it is "axiomatic that summary judgment procedure must be applied with extreme caution so that a party's right to a fair determination of a genuine issue of fact is not jeopardized." Christmas's Br. at 19 (citing *Jones v. City of Logansport,* 436 N.E.2d 1138, 1143 (Ind.Ct.App.1982)). Christmas concludes that because the hearing was vacated *"after* Christmas's time to request a hearing had expired; *after* his written arguments had been prepared and submitted with the expectation that a hearing would follow, and *after* the filing of Windsor's Reply," the procedure outlined in Trial Rule 56(C) was not applied with the "extreme caution required by law." Christmas's Br. at 19–20. (emphasis in original).

Trial Rule 56(C) provides that the trial court may conduct a hearing on a summary judgment motion, but the court is not required to do so unless one of the parties requests a hearing. Under the rule, it was not a redundant act for Christmas to request a hearing because without the request the trial court is always free to do what the trial court did in the present case—determine the efficacy of the summary judgment motion without a hearing.

■ Christmas's redundancy argument is further weakened by his failure to do anything after he learned that the trial court intended to rule on the filings. The trial court notified Christmas's counsel by telephone on October 27, 2010, that the previously-scheduled summary judgment hearing had been cancelled. Christmas did nothing in the intervening nine days before the trial court ruled on the summary judgment motion. In other words, he failed to raise the issue of the hearing before the trial court until after a ruling on the summary judgment motion had been

made. A party may not raise an issue for the first time in a motion to correct error or on appeal. *Troxel v. Troxel,* 737 N.E.2d 745, 752 (Ind.2000).

### 2. *Propriety of Grant of Motion for Summary Judgment*

Christmas contends that the trial court erred in granting summary judgment in favor of Windsor. Specifically, he contends that an inference can be drawn from the designated evidence that he was a business visitor and that Windsor owed him the duty to exercise reasonable care for his protection. He also contends that an inference can be drawn from the designated evidence that Windsor breached its duty of care. Thus, Christmas concludes that there are genuine issues of material fact that render the grant of summary judgment improper.

■■■ We conduct a *de novo* review of a trial court's summary judgment ruling to determine whether the evidence shows there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Beta Steel v. Rust,* 830 N.E.2d 62, 67–68 (Ind.Ct.App. 2005). In so doing, "we view the designated evidence independently and with an eye toward construing it most favorably to the nonmovant." *Id.* Even if facts are undisputed, summary judgment is not proper if those undisputed facts give rise to conflicting inferences which would alter the outcome. *Underwood v. City of Jasper Mun. Utility Service Bd.,* 678 N.E.2d 1280, 1282 (Ind.Ct.App.1997), *trans. denied.* In the summary judgment context, we are not bound by the trial court's specific findings

or conclusions. *Countrymark Cooperative, Inc. v. Hammes,* 892 N.E.2d 683, 688 (Ind.Ct.App.2008), *trans. denied.* They merely aid our review by providing us with a statement of the reasons for the trial court's actions.[2] *Id.*

■■■ The tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Yates v. Johnson County Bd. of Com'rs,* 888 N.E.2d 842, 847 (Ind.Ct.App.2008). Summary judgment is appropriate if the material evidence negates one of these elements. *Id.* Summary judgment is "rarely appropriate" in negligence cases. *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

### a. *Premises liability-status*

■■■ Christmas's negligence claim is based on premises liability. The law is well established that a person entering upon the land of another comes upon the land as an invitee, a licensee, or a trespasser. *Rhoades v. Heritage Inv., LLC,* 839 N.E.2d 788, 791 (Ind.Ct.App.2005), *trans. denied.* Thus, the first step in resolving a premises liability case is to determine the plaintiff's status. *Id.* The status then defines the duty owed from the landowner to the visitor. *Id.* This court has in the past held that a person's status on the land is a matter left for determination by the court,

---

**2.** The trial court concluded from Christmas's response to Windsor's summary judgment motion that Christmas "admitted" that there were no genuine issues of material fact. (Christmas's App. 87). In his response, Christmas stated, "Generally speaking the facts are not seriously disputed. The dispute

centers on [Christmas's] status on the land at the time of the fall and whether that status creates a duty." (Christmas's App. 78). Christmas then proceeds to discuss the facts and the inferences that can be drawn therefrom. The trial court's conclusion is incorrect.

not the jury. *Id.* However, we have recently noted that "[o]ur supreme court ... clarified that a person's status on the land may turn on factual issues that must be resolved by the trier of fact and that such issues may preclude summary judgment. ..." *Yates,* 888 N.E.2d at 848 (citing *Kopczynski v. Barger,* 887 N.E.2d 928, 931 (Ind.2008)).

■■■ An invitee can be categorized as public invitee, a business visitor, or a social guest. *Burrell v. Meads,* 569 N.E.2d 637, 642 (Ind.1991). Here, Christmas claims that he is a business visitor. Our supreme court has adopted Restatement (Second) of Torts Section 332 to define the term as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land." *Taylor v. Duke,* 713 N.E.2d 877, 881 (Ind.Ct.App.1999).

■■■ Licensees and trespassers are defined as those who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Taylor,* 713 N.E.2d at 881. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's permission or sufferance. *Id.* In *Rhoades,* 839 N.E.2d at 792, we noted that the comments to Restatement (Second) of Torts Section 330 provides that "the word 'consent' or 'permission' indicates that the possessor is in fact willing that the other shall enter or remain on the land, or that his conduct is such as to give the other reason to believe that he is willing that he shall enter, if he desires to do so." We further noted that the comments to Restatement (Second) of Torts Section 332 clarify the difference between invitation and permission by stating, "An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so." *Id.*

Christmas argues that it can be inferred from the designated evidence that he was a business visitor at the time of his fall. He relies on both Section 332, as described above, and a comment thereto. We consider the import of the comment below.

Comment (e) to Section 332 defines two classes of business visitors, the second of which Christmas relies upon. This portion of the comment states:

> The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land. Thus a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor, and so is a workman who comes to make alterations or repairs on land used for residence purposes.

■■■ Christmas contends that there is at least an inference from the designated evidence that he is a business visitor because he came upon the premises for a purpose connected with his own business which was also connected to a purpose for which Windsor used the premises as expressed in Windsor's mission statement, i.e. striving to promote healing, provide hope, preserve dignity and produce value for each employee. Christmas argues that at the very least it can be inferred from the designated facts that his association with the detainee/employee provided the benefit of keeping Windsor's employee from violating parole and losing her job, thus ensuring that Windsor would not have

to train a replacement employee. Christmas contends that in addition to the relationship between the designated facts and Windsor's mission statement, "the facts and inferences in the record are that Windsor *had to have been aware* of its employee's status as a detainee, that Christmas was previously welcome on its premises, and that Windsor or its employees had even provided Christmas with an access code to its secured door." Christmas's Reply Br. at 5. (emphasis in original).

■■■ We cannot say that under all circumstances that a home detention officer visiting a detainee upon an employer's premises is a business visitor. Certainly, the fact that a detention officer is permitted on the premises does not make him an invitee. Furthermore, the broad intentions of a mission statement do not change the fact that Windsor is a provider of post-acute health care services, not a social agency that invites (rather than permits) detention officers upon its premises. However, in the present case, where someone at Windsor provided a special access code to Christmas, and Windsor has designated no evidence to show that such provision was unapproved, a trier of fact could infer that Christmas was invited to enter Windsor's premises. Accordingly, there is a genuine issue of material fact on this issue.

*b. Premises liability-nature of the duty*

■■■ A person's status on the land defines the nature of the duty owed by the landowner to the visitor. *Rhoades,* 839 N.E.2d at 791. A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while he is on the premises. *Taylor,* 713 N.E.2d at 881.

■■■ A determination of whether there has been a breach of duty in a negligence action generally is a question of fact for a jury and, therefore, inappropriate for resolution by summary judgment. *Northern Indiana Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind.2003). The court may, however, determine as a matter of law whether a breach of duty has occurred when the facts are undisputed and lead only to a single inference or conclusion. *Id.*

Our Indiana Supreme Court has adopted Restatement (Second) of Torts Section 343, which defines the scope of the duty a landowner owes to an invitee on its property and provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Burrell,* 569 N.E.2d at 639–40 (quoting Restatement (Second) of Torts § 343 (1965)). All three conditions set forth in Section 343 must be met for liability to attach. *Harradon v. Schlamadinger,* 913 N.E.2d 297, 301 (Ind.Ct.App.2009), *trans. denied.* Therefore, in order for Windsor to obtain summary judgment in its favor, it was required to designate evidence demonstrating that one of these elements of premises liability is not satisfied. *See Pfenning v. Lineman,* 947 N.E.2d 392, 406 (Ind.2011); *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 123 (Ind.1994).

■ Additionally, Section 343A of the Restatement (Second) of Torts—which discusses known or obvious dangers and is meant to be read along with Section 343—provides, in part, as follows: "A possessor of land is not liable to his invitees for physical harm caused to them by any ... condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."[3] *Smith v. Baxter*, 796 N.E.2d 242, 245 (Ind.2003) (quoting Restatement (Second) of Torts § 343A); *see also Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind.1990). "The comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts."[4] *Smith*, 796 N.E.2d at 245.

■ Here, Windsor argues that summary judgment was appropriate because the designated evidence shows that the danger of slipping on ice was known or obvious to Christmas. Windsor emphasizes that Christmas knew of the presence of water and snow and, under a reasonable person standard, would know of the danger of slipping when coming into contact with either condition. Windsor equates the danger of slipping on water and snow with the danger of slipping on ice. It argues that snow, by definition, includes ice. It cites *Webster's New Collegiate Dictionary* at 1100 (1st ed.1975), which defines snow as "precipitation in the form of small tubular and columnar white ice crystals formed directly from the water vapor of the air at a temperature of less than 32 [degrees] F."

The designated evidence shows that Christmas walked through water and snow in Windsor's parking lot before proceeding onto the sidewalk. There is no designated evidence that the condition of the sidewalk differed from that of the parking lot; indeed, Christmas's designated evidence indicated that he observed only water and snow on the sidewalk. He also designated evidence to indicate that he fell because the ice was hidden from his view. Windsor, on the other hand, failed to designate any evidence to show what steps it took to ascertain the danger of the condition or to protect invitees from the danger posed by the hidden condition.

From this evidence, a trier of fact could infer from the designated evidence that

3. As explained in the comment (b) to Section 343A:

The word "known" denotes knowledge of the existence of the condition or activity itself and also appreciation of the danger it involves. Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

4. We acknowledge that our supreme court recently indicated that a plaintiff's subjective knowledge of a risk of harm should not be addressed when analyzing the factors contained in Restatement (Second) of Torts Section 343 and stated that the plaintiff's knowledge is only relevant when assessing the defense of incurred risk. *See Pfenning*, 947 N.E.2d at 406. That case, however, did not address Restatement Section 343A. Furthermore, in *Smith*, 796 N.E.2d at 244, our supreme court reaffirmed that the analysis in *Douglass*, 549 N.E.2d at 370—that parties' knowledge of a risk is appropriate for determination of both breach of duty and defense of incurred risk—was applicable even after the passage of the Comparative Fault Act.

Windsor (1) knew or by the exercise of reasonable care would discover the condition, and should have realized that it involved an unreasonable risk of harm to Christmas; (2) should have expected that Christmas would not discover or realize the unreasonable risk of harm of ice hidden by water and snow; and (3) failed to exercise reasonable care to protect Christmas against the danger. In short, there is a genuine issue of material fact pertaining to whether Windsor breached its duty of care.[5]

## CONCLUSION

We reverse the trial court's order granting summary judgment to Windsor and remand for further proceedings.

Reversed and remanded.

RILEY, J., and BARNES, J., concur.

5. We acknowledge that the definition of "snow," as cited by Windsor, includes a reference to ice crystals. Experience informs us, however, that the "ice crystals" that form snow in the atmosphere differ from the "ice" found on the ground.