

FILED

Mar 07 2018, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Richard A. Cook
Bryan C. Tisch
Yosha Cook & Tisch
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION

Gabriel A. Hawkins
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Lisa M. Dillman
Thomas C. Hays
Barath S. Raman
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF
INDIANA

Lucy R. Dollens
Jacob V. Bradley
Quarles & Brady LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Amber Hamilton,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Steak 'n Shake Operations Inc.,<br>*Appellee-Defendant* | March 7, 2018<br><br>Court of Appeals Case No.<br>49A02-1704-CT-776<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Heather A. Welch,<br>Judge<br><br>Trial Court Cause No.<br>49D01-1308-CT-30340 |

**Altice, Judge.**

**Case Summary**

[1] Amber Hamilton was shot in the face during an altercation that transpired after a group of individuals entered the Steak 'n Shake restaurant where she was eating and verbally threatened and taunted her and her brother over a period of approximately thirty minutes. Steak 'n Shake employees witnessed the escalation of threats and verbal abuse, but did not take action until it seemed that a physical altercation was imminent, at which point the acting manager told the group they needed to leave the premises. Moments later, the altercation turned physical inside the Steak 'n Shake, at which time, the Steak 'n Shake employees summoned help. Hamilton was shot less than a minute later.

[2] Hamilton filed a complaint alleging that Steak 'n Shake was negligent for failing to protect her from the criminal act of another. Steak 'n Shake filed a Motion for Summary Judgment, which was initially denied by the trial court. A little more than a year later, Steak 'n Shake filed a motion asking the trial court to reconsider its denial of summary judgment in light of the recent pronouncement by the Indiana Supreme Court with regard to the determination of duty. After considering the Supreme Court's decisions in *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016) and *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016), the trial court granted summary judgment in favor of Steak 'n Shake, concluding that Steak 'n Shake did not owe Hamilton a duty to protect her from another's unforeseeable criminal act. Hamilton appeals, arguing that the trial court's determination that Steak 'n Shake did not owe her a duty is erroneous.

[3]     We reverse and remand.

## Facts & Procedural History[1]

[4]     The facts most favorable to Hamilton, the non-movant, follow. On or about December 21, 2012, Hamilton, her brother Dustyn, and two friends were patrons at an Indianapolis Steak 'n Shake. A server and a cook, who was also acting as the manager, were the only other persons present. Shortly after Hamilton's group ordered their food, another group of individuals, including Ricky Jackson, entered the Steak 'n Shake and sat about ten to twenty feet away. Jackson began to threaten and verbally abuse Hamilton and Dustyn on account of Dustyn's sexual orientation. Jackson also attempted to goad Dustyn into fighting him and even blocked the door so no one could leave. At one point, Jackson went outside and continued taunting Hamilton and Dustyn by repeatedly pounding on the windows and yelling for Dustyn to come outside and fight him.

[5]     The tension between the two groups escalated over the course of approximately thirty minutes. The server was aware of the verbal exchange and the nature of the insults and informed the cook/manager of the confrontation between the groups. Neither of the Steak 'n Shake employees took any action to intervene

---

[1] We held oral argument in this matter on February 15, 2018, in Indianapolis, Indiana. We commend counsel for their excellent written and oral advocacy.

while the groups were seated at their tables, nor did they contact Steak 'n Shake's security agency or the police to defuse the situation.

[6] The confrontation continued to intensify as the two groups made their way toward the cash register. The server and the cook stood behind the counter observing the heated exchange between the groups. Only after it seemed as though a physical altercation was imminent did the cook/manager address the groups, saying several times, "Hey, you guys got to stop it and leave." *Appellant's Appendix Vol. 4* at 54. None of the individuals heeded the order and moments later, a physical altercation ensued between Jackson and Dustyn inside the Steak 'n Shake near the cash register. Hamilton inserted herself into the fray to help her brother and in response to Jackson repeatedly calling her names. After Hamilton hit Jackson in the face, Jackson pulled out a gun and shot Hamilton point blank in the face, causing Hamilton to suffer serious injuries. After the physical confrontation started, the server called for help, and after the gun was fired, the cook ran across the street to a nearby business to summon help.

[7] On August 8, 2013, Hamilton filed a complaint alleging negligence against Steak 'n Shake for failing "to take affirmative action to control the wrongful acts of third parties," which ultimately resulted in harm to her, an invitee of the restaurant. *Appellant's Appendix Vol. 2* at 52. After a period of discovery, Steak 'n Shake filed a motion for summary judgment along with a brief in support thereof and designated evidence on October 16, 2014. Hamilton filed a response in opposition to summary judgment and her designation of evidence

on May 29, 2015. Steak 'n Shake filed a motion to strike Hamilton's designated evidence in opposition to summary judgment along with a reply in support of summary judgment. On June 22, 2015, the trial court held a hearing on the pending summary judgment motion. On September 24, 2015, the trial court entered an order denying Steak 'n Shake's motion for summary judgment.[2]

[8]     On November 17, 2016, Steak 'n Shake filed a Motion to Reconsider the trial court's order denying its motion for summary judgment in light of the Supreme Court's recent decision in *Goodwin*. On January 26, 2017, Hamilton filed a response directing the trial court's attention to *Rogers*, a companion case handed down the same day as *Goodwin*.[3] Hamilton also filed a supplemental designation of evidence. On January 31, 2017, Steak 'n Shake filed a reply in support of its motion to reconsider and a motion to strike Hamilton's supplemental designation of evidence. At a February 1, 2017 hearing, counsel for both parties presented oral argument on the motion to reconsider and the motion to strike. On March 14, 2017, the trial court granted Steak 'n Shake's motion to reconsider and thereafter entered summary judgment in favor of Steak 'n Shake based on its determination that Steak 'n Shake did not owe a

---

[2] The trial court also granted Steak 'n Shake's motion to strike the narrative that accompanied the surveillance video of the altercation, the depositions of several witnesses that were obtained for purposes of the criminal proceedings against Jackson, an email from Steak 'n Shake's security company to Steak 'n Shake, and a witness's statement to police.

[3] Both cases were handed down on October 26, 2016.

duty to Hamilton.[4]  Hamilton filed her Notice of Appeal on April 13, 2017.

Additional facts will be provided as necessary.

### Discussion & Decision

[9]     We review a grant of summary judgment de novo, in the same way as the trial court.  *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).  We will affirm such a ruling only if, after drawing all reasonable inferences in favor of the non-moving party, the designated evidence shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.  *Id.* (quoting Ind. Trial Rule 56(C)).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences."  *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)).  When the trial court has granted summary judgment, the nonmoving party has the burden on appeal of persuading us that the grant of summary judgment was in error. *Adams v. ArvinMeritor, Inc.*, 48 N.E.3d 1, 9 (Ind. Ct. App. 2015).

[10]    The parties agree that recent decisions from our Supreme Court—*Goodwin* and *Rogers, supra*—set forth the analytical framework to be followed by a court in

---

[4] The trial court also granted Steak 'n Shake's motion to strike Hamilton's supplemental designated evidence. Hamilton does not challenge this ruling on appeal.

evaluating foreseeability as it relates to the duty a landowner owes to an invitee in negligence actions. This framework provides that

> foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm. In other words, this foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence.

*Rogers*, 63 N.E.3d at 325; *see also Goodwin*, 62 N.E.3d at 390. To give some context, we examine the Supreme Court's application of this framework to the facts in *Goodwin* and *Rogers*.

[11] In *Goodwin*, a patron at a neighborhood bar overheard what he believed was a derogatory comment about his wife. That patron produced a handgun and fired it, striking the offending customer as well as two other customers sitting at a separate table. There was no prelude to the attack, nor was there any involvement of the bar's staff preceding the verbal exchange and shooting. One of the injured patrons brought a complaint for damages against the bar alleging negligence in failing to provide security for its patrons. The bar moved for summary judgment, claiming that the shooting was not foreseeable and that it had no duty to anticipate and take steps to prevent the criminal act. The trial court granted summary judgment in favor of the bar. On appeal, the Court of Appeals, noting confusion in the law with regard to how a court determines whether a duty exists in the context of a negligence claim, reversed the trial

court. *See Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 28 N.E.3d 310, 311 (Ind. Ct. App. 2015), *trans. granted*. The Supreme Court granted transfer and "[e]ndeavor[ed] to clarify the confusion." *Goodwin*, 62 N.E.3d at 386.

[12] While foreseeability is most often a component of proximate causation and thus a question for the trier of fact, our Supreme Court noted that in some instances, including the matter before it, foreseeability is also a component of the duty element of negligence. *Id.* at 389 (noting that "in the case before us" foreseeability is a component of duty). This stems from the well-settled law that a proprietor owes its invitees a duty "to take reasonable precautions to protect invitees from *foreseeable* criminal acts." *Id.* at 388 (emphasis in original). In support, the Court cited its prior statement in *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1053 (Ind. 2003), that "[t]here is no doubt ... that reasonable foreseeability is an element of a landowner or business proprietor's duty of reasonable care. The issue is merely at what point and in what manner to evaluate the evidence regarding foreseeability." *Goodwin*, 62 N.E.3d at 388. The Court reiterated:

> [i]n sum, because foreseeability is—in this particular negligence action—a component of duty, and because whether a duty exists is a question of law for the court to decide, the court must of necessity determine whether the criminal act at issue here was foreseeable. This is not a "redetermination" of the duty a landowner owes its invitees. Rather, the focus is on the point and manner in which we evaluate whether foreseeability does or does not exist. *See Bartolini*, 799 N.E.2d at 1053. And that point initially rests with the trial court as gatekeeper.

*Goodwin*, 62 N.E.3d at 389. In other words, the trial court's job in determining whether a duty exists is to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced such that liability may appropriately be imposed on the negligent party. *Id*. at 390.

[13] The Court then addressed the manner in which courts must undertake the determination of whether a duty is owed. The Court first considered and then rejected the totality of the circumstances test used in prior cases, finding such test to be "inappropriate when analyzing foreseeability in the context of duty."[5] *Id*. at 389. The Court then adopted the analytical framework for assessing foreseeability in the duty context set forth in *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), in which it was noted that "the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin*, 62 N.E.3d at 390. In explaining further, the Court noted that

> because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome is "sufficiently likely" is not enough to give rise to a duty. Instead, for purposes of

---

[5] In rejecting the totality of the circumstances test, the Court abrogated *L.W. v. W. Golf Ass'n*, 712 N.E.2d 983 (Ind. 1999), *Vernon v. Kroger Co.*, 712 N.E.2d 976 (Ind. 1999), and *Delta Tau Delta v. Johnson*, 712 N.E.2d 968 (Ind. 1999), to the extent they applied such test in determining whether a duty was owed under the circumstances of each case.

> determining whether an act is foreseeable in the context of duty we assess "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it."

*Id*. at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)).

[14] Applying this framework to the facts of the case, the *Goodwin* Court noted that the broad type of plaintiff was a patron of a bar and that the harm was the probability or likelihood of a criminal attack, i.e., a shooting inside the bar. The Court stated its belief that bar owners do not "routinely contemplate that one bar patron might suddenly shoot another" and that "to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state." *Id*. at 394. The Court held that "a shooting inside a neighborhood bar is not foreseeable as a matter of law." *Id*. The Court therefore affirmed the trial court's grant of summary judgment in favor of the bar.

[15] In the companion case of *Rogers v. Martin*, the Court applied this same framework to a different factual scenario. In *Rogers*, a homeowner hosted a house party and, unbeknownst to the homeowner, in the later hours thereof, the homeowner's boyfriend got into a fist fight with two guests. The boyfriend got the better of the fight. The homeowner subsequently observed one of the guests lying motionless on the basement floor. Rather than seek help, the homeowner went to bed. The guest was found dead the following morning. The decedent's

estate sued the homeowner alleging, in part, that she was negligent because she failed to render aid to her guest after she observed him lying on her basement floor.

[16] The Court began by recognizing that a landowner must exercise reasonable care to protect social guests. *Rogers*, 63 N.E.3d at 321-22. This "duty to protect" extends not only to harm caused by a condition of the land, but also to activities conducted on the land. *Id*. at 322-23. For activities occurring on the land, "foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances." *Id*. at 323.

[17] Given the facts of the case, the Court noted that the factual scenario gave rise to "two particular situations," the first being whether the homeowner owed a duty to take reasonable precautions to protect her guest from the harm that occurred during the fist fight and the second being whether the homeowner owed a duty to protect her guest from an exacerbation of injuries after finding him unconscious on her basement floor. *Id*. at 326. With regard to the first situation, the Court defined the inquiry as whether a duty should be imposed on a homeowner to take precautions "to prevent a co-host from fighting with and injuring a house-party guest." *Id*. The Court found that it was "not reasonably foreseeable for a homeowner to expect this general harm to befall a house-party guest" and that "to require a homeowner to take precautions to avoid this unpredictable situation would essentially make the homeowner an insurer for all social guests' safety." *Id*. Therefore, the Court held that the homeowner

was not liable as a matter of law for any failure on her part to protect her guest from an unforeseeable fistfight. *Id.* at 320.

[18]     With regard to the second situation, the Court found that "[h]omeowners should reasonably expect that a house-party guest who is injured on the premises could suffer from an exacerbation of those injuries." *Id*. at 327. Thus, the Court held that summary judgment was improper because, although the homeowner did not have a duty to anticipate the fight, she had a duty to render assistance once she observed her guest lying motionless on the floor. *Id*. at 327. The Court believed that reasonable persons would recognize and agree that a homeowner had a duty under the circumstances. *Id*.

[19]     As was the issue in *Goodwin* and *Rogers*, the question presented herein is whether a duty exists. If a duty exists, summary judgment was improperly granted; if a duty does not exist, summary judgment was properly granted. Applying the *Goodwin/Rogers* framework, the parties reach contrary conclusions as to whether Steak 'n Shake owed a duty to Hamilton.

[20]     We begin by noting that Hamilton's negligence claim is based on premises liability. The law is well established that a person entering upon the land of another comes upon the land as an invitee, a licensee, or a trespasser. *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872, 878 (Ind. Ct. App. 2011). Thus, the first step in resolving a premises liability case is to determine the plaintiff's status. *Id*. The status then defines the duty owed from the landowner to the visitor. *Id*. Here, there is no dispute that Hamilton was an invitee.

[21]  As the *Rogers* Court noted,

> [u]nder Indiana premises liability law, the duty a landowner owes to an invitee is well established: a landowner must exercise reasonable care for the invitee's protection while the invitee is on the premises. Because this general duty has been articulated, the Court need not judicially determine the existence of a separate duty today. Rather, we look to foreseeability as the critical inquiry in deciding whether the landowner-invitee "duty to protect" extends to a particular scenario.

63 N.E.3d at 320. To be sure, where the harm is not foreseeable, to impose a duty on the proprietor/landowner would effectively impose strict liability and render the proprietor/landowner an insurer of patron/invitee safety. As our Supreme Court noted, this result is contrary to the public policy of this State. On the other hand, a proprietor/landowner should not be afforded absolute immunity from harm that occurs while on their premises. The element of foreseeability is therefore part and parcel of defining the broad type of plaintiff and the broad type of harm. In this regard, the *Goodwin/Rogers* framework is consistent with the RESTATEMENT (SECOND) OF TORTS § 344 cmt. f, which provides that "[s]ince the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care *until he knows or has reason to know* that the acts of the third person are occurring, or are about to occur." (Emphasis supplied).

[22]  In *Goodwin*, the Court held that there was no duty to anticipate injury arising from the conduct of a third party because the conduct was not foreseeable. This was the end of the story in *Goodwin* because the harm resulted after a patron

unexpectedly and without warning fired a gun striking several patrons. Likewise, in *Rogers*, a fist fight between the landowner's boyfriend and a house-party guest was not predictable.

[23] In *Rogers*, however, the Court identified a second situation presented by the facts that required an independent determination as to whether the landowner owed a duty to her invitee. The Court determined once the landowner observed her injured guest lying motionless on the floor, the landowner had a duty to render assistance. The landowner's knowledge of the guest's injury was crucial to assessing foreseeability, and in turn, to the determination that the landowner owed a duty. The Court noted that a landowner "should reasonably expect that a house-party guest who is injured on the premises could suffer from an exacerbation of those injuries." *Id*. at 327.

[24] Here, Hamilton asserts that Steak 'n Shake was fully aware of the discord between the two groups and the escalating tension that intensified over the course of approximately thirty minutes. Indeed, the thirty-minute altercation involved not only verbal threats and taunts, but also efforts to incite a physical confrontation, blocking of the entrance/exit, and pounding on the windows from outside of the restaurant. Under these circumstances, Hamilton contends that the likelihood of harm to her as an invitee was high and that the potential for harm was "serious enough to induce a reasonable person to take precautions to avoid it." *Appellant's Brief* at 20 (citing *Goodwin*, 62 N.E.3d at 392). Thus, Hamilton argues that Steak 'n Shake had a duty to take action to protect her from Jackson's conduct.

Steak 'n Shake, on the other hand, argues that the trial court properly determined that, without regard for the specific facts of the case, the broad type of plaintiff was a patron in a restaurant and the broad type of harm was the criminal act of a third party. Thus, as in *Goodwin*, where the Court found that the bar did not owe a duty to protect a bar patron from an unforeseeable criminal act of another, Steak 'n Shake argues that it did not owe a duty to Hamilton to protect her from Jackson's unforeseeable criminal act. Steak 'n Shake emphasizes that if a shooting in a bar is not foreseeable as a matter of law, then a shooting inside its restaurant is not foreseeable.

We find Steak 'n Shake's position too narrow. While in *Goodwin* the Court declared that "a shooting inside a neighborhood bar is not foreseeable as a matter of law," such statement followed the Court's conclusion that bar owners do not "routinely contemplate that one bar patron might *suddenly* shoot another." *Goodwin*, 62 N.E.3d at 394 (emphasis supplied). The bar did not know or have reason to know that the third party would act in such manner. Indeed, the conduct of the third party was sudden and without warning. The Court reached the same conclusion with regard to the fist fight that occurred in *Rogers*, finding that it was an unpredictable situation and thus, it was not reasonably foreseeable for the landowner to expect that type of harm to befall a guest. In both instances, foreseeability was key to the Court's analysis, and foreseeability hinged on what the landowner knew or had reason to know as it

concerned the injured party. In Steak 'n Shake's application of the *Goodwin/Rogers* framework, it omits the element of foreseeability.[6]

[27] As argued by Hamilton, we find that the factual scenario presented is akin to the second situation identified by the Supreme Court in *Rogers*, wherein the Court redefined the broad type of plaintiff and harm in terms of the landowner's knowledge that a house-party guest had been injured. The *Rogers* Court concluded that the landowner's knowledge that the house-party guest had been injured gave rise to a duty to take precautions to protect the injured guest from exacerbation of those injuries. Similarly, here, Steak 'n Shake's knowledge of the events taking place on its premises gave rise to a duty to take reasonable steps to provide for patron safety.

[28] Here, we define the broad type of plaintiff and the broad type of harm in terms of foreseeability. Hence, the broad type of plaintiff is a restaurant patron who has been subjected to escalating threats and taunts and the broad type of harm is injury resulting after the encounter culminated in physical violence. Steak 'n Shake did not have to know the precise harm that would befall its customer, only that there was some probability or likelihood that one of its patrons could be harmed and that the potential harm was serious enough that a reasonable person would have been induced to take precautions to avoid it. An escalating

---

[6] To accept Steak 'n Shake's identification of the broad type of plaintiff and broad type of harm would essentially extend immunity to proprietors for any harm to a patron resulting from acts of a third party, criminal or otherwise, regardless of the circumstances.

thirty-minute encounter that included verbal threats and taunts, blocking of the exit, and pounding on windows in an effort to incite a physical altercation, all of which Steak 'n Shake had knowledge, clearly created some likelihood that one of Steak 'n Shake's patrons could be harmed and that the potential harm could be serious. Given the circumstances, we conclude that Steak 'n Shake had a duty as a proprietor to take reasonable steps to provide for patron safety once the raucous behavior came to its attention.[7] This is not to say, however, that Steak 'n Shake was negligent, as issues of breach and proximate cause must still be determined by a trier of fact.

[29] Having determined that under these facts Steak 'n Shake owed a duty to protect Hamilton, we necessarily conclude that the trial court erred in granting summary judgment in favor of Steak 'n Shake.

[30] Judgment reversed and remanded.

Baker, J. and Bailey, J., concur.

---

[7] We recognize that there is a sliding scale in terms of what steps would be reasonable under a given set of circumstances. This, however, is part of the fact-finder's determination of breach.