

IN THE

# Court of Appeals of Indiana

Vance Tolbert, individually and on behalf of Lucas Tolbert,

*Appellants-Plaintiffs*

v.

Redbones, Inc.,

*Appellee-Defendant*



FILED

Jun 19 2024, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

June 19, 2024

Court of Appeals Case No.
23A-CT-1857

Appeal from the Daviess Circuit Court

The Honorable Gregory Smith, Judge

Trial Court Cause No.
14C01-2105-CT-307

**Opinion by Judge Riley**
Judges Brown and Foley concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Plaintiffs, Vance Tolbert (Vance), individually and on behalf of Lucas Tolbert (Tolbert) (collectively, the Tolberts), appeal the trial court's partial summary judgment in favor of Appellee-Defendant, Redbones, Inc. (Redbones).

We affirm.

## ISSUE

The Tolberts present this court with two issues, which we consolidate and restate as follows: Whether genuine issues of material fact exist as to whether Redbones owed Tolbert a duty of care.

## FACTS AND PROCEDURAL HISTORY

Redbones is an Indiana corporation operating a bar and grill in Montgomery, Daviess County, Indiana. This case stems from a fight which occurred on Redbones' business premises during the early morning of September 27, 2020, between Tolbert and Tyler Ross (Ross). Prior to coming to Redbones, Tolbert had attended a wedding and a reception where alcohol had been served. After the reception, Tolbert was driven to Redbones by a friend. Tolbert was visibly and obviously intoxicated when he arrived at Redbones. Angela Graber (Graber) was the only Redbones employee working that night at the bar. Graber is a licensed bartender who had worked for Redbones for over twenty

years. Graber informed Tolbert that he would not be served any alcohol and that he should get a ride home. Tolbert assured Graber that he was fine, but he was seen with his head on the bar by other patrons. A number of people from the wedding party arrived, and the socializing continued.

[5] Ross had been at Redbones earlier in the evening, left to attend a party, but returned to Redbones. Ross and Tolbert were at Redbones at the same time for thirty minutes to an hour without any interaction or hostility. Neither was acting aggressively toward other bar patrons. At the time of the fight, there were around eight patrons left in the bar, as most of the wedding party had left or were waiting outside for a party bus to pick them up. Music was playing in the bar, and Ross and others were watching a professional basketball game on the television. Ross and Tolbert were seated apart from each other at Redbones' horseshoe shaped bar, with other patrons and empty chairs between them. Ross made a comment about an announcement that appeared on the television for a social justice movement, which prompted Tolbert to lift his head from the bar and pronounce his support for the movement. The two men had a back-and-forth about this topic for approximately a minute and a half and then continued talking with raised voices for approximately another minute and a half, after which Tolbert got up from his barstool and approached Ross. The men exchanged up to five shoves, although the record is unclear who shoved first. Ross then punched Tolbert once. Tolbert was subsequently taken to the hospital and treated for grave injuries to his head.

On May 12, 2021, the Tolberts filed their Complaint sounding in an intentional tort claim as to Ross and premises liability claims as to Redbones.[1] The Tolberts alleged that Redbones had a duty to use ordinary care and diligence to keep and maintain its premises secure and reasonably safe for its patrons and, more specifically, that Redbones had a duty to exercise reasonable care to protect its patrons from the danger of reasonably foreseeable injury occurring from reasonably foreseeable acts of violence by its other patrons. On February 1, 2023, the Tolberts amended their Complaint to add a claim under the Indiana Dram Shop Act. That same day, the trial court granted the Tolberts' motion to dismiss Ross as a defendant, with the caveat that Redbones would be allowed to name him as a non-party defendant.

On February 24, 2023, the Tolberts filed their motion for partial summary judgment, along with their memorandum and designation of evidence in support, on the issue of whether Redbones owed Tolbert a duty of care to protect him from Ross' punch. In support of their motion, the Tolberts designated evidence that Graber knew that Tolbert was intoxicated, that she knew that customers could become aggressive when they consume alcohol, and that she knew that you have to "keep an eye on" severely intoxicated patrons. (Appellants' App. Vol. II, p. 176). The Tolberts also designated the deposition

---

[1] On September 29, 2020, the State filed an Information, charging Ross with battery resulting in serious bodily injury. While the instant suit was ongoing, Ross was tried and acquitted.

testimony of Morganne Doyle (Doyle), who was seated next to Ross, that she had heard Ross and Tolbert yelling and had turned to her husband to tell him that she thought there was going to be a fight. The Tolberts also designated the interrogatory response of Redbones' owner Cindy Wilcher (Wilcher) that

> [f]rom my discussions with [Graber], the incident occurred when Tolbert and Ross exchanged words while both were at the bar. Ross was seated at the bar. Tolbert walked over to where Ross was seated[,] and they continued to exchange words. Ross got up[,] and after shoves were exchanged, Ross hit Tolbert with one punch and fell Tolbert [sic].

(Appellants' App. Vol. II, p. 131) (first names removed). In addition, Wilcher provided the following deposition testimony:

> Answer: They were exchanging words seated apart, and they continued to exchange words when [Tolbert] went over to where [Ross] was.
>
> Question: But if [] Graber is hearing this, it's obviously loud enough for her to hear it, right?
>
> Answer: I'm assuming so, yes. She would be about three feet away from them.

(Appellants' App. Vol. II, p. 84).

[8]     After being granted several extensions of time, on June 14, 2023, Redbones filed its cross-motion for partial summary judgment and response to the Tolberts' motion for partial summary judgment, together with a memorandum and designation of evidence in support, arguing, as to the premises liability claims only, that it owed no duty to Tolbert to protect him from the

unforeseeable act of Ross' punch. In support of its motion, Redbones designated the following evidence. Graber was behind the bar but had not been watching Tolbert the whole time he was in the bar. Graber did not "know what led up to [Ross'] punch." (Appellants' App. Vol. III, p. 66). Graber saw Tolbert get up from his barstool but thought that he was leaving to catch a ride home on the party bus with the rest of the wedding party. Graber turned away to do something and then turned back around in time to see Ross punching Tolbert. On July 17, 2023, the Tolberts filed their response to Redbones' cross-motion.

[9] On August 2, 2023, the trial court entered its Order, denying the Tolberts' motion for partial summary judgment and granting Redbones' motion for partial summary judgment. The trial court did not enter any specific findings of fact or conclusions thereon in support of its Order. The trial court entered final judgment on the Tolberts' premises liability claims pursuant to Indiana Trial Rule 54(B).

[10] The Tolberts now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Standard of Review*

[11] An appellate court reviews summary judgment using the same standard as the trial court: summary judgment is appropriate only when the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule

56(C); *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of establishing that it is entitled to summary judgment. *Pfenning v. Lineman*, 947 N.E.2d 392, 396-97 (Ind. 2011). Once the moving party meets this burden, the non-moving party must set forth specific facts demonstrating a genuine issue for trial. *Id*. at 397. The reviewing court is required to construe the evidence in favor of the non-movant and to resolve all doubts against the moving party. *Id*. Here, the parties submitted cross-motions for summary judgment. Cross-motions for summary judgment do not affect our standard of review, and we simply construe the facts most favorably to the non-moving party in each instance. *Alexander v. Linkmeyer Dev. II, LLC*, 119 N.E.3d 603, 612 (Ind. Ct. App. 2019). Whether one party owes another a duty for purposes of establishing a negligence claim is generally a question of law to be determined by the trial court. *Reece v. Tyson Fresh Meats, Inc.*, 173 N.E.3d 1031, 1033 (Ind. 2021). We review this legal question de novo, without deference to the trial court's decision. *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 912-13 (Ind. 2017).

II. *Existence of a Duty of Care*

[12] In order for a plaintiff to recover damages based on negligence, the plaintiff must establish: "(1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Wiley v. ESG Sec. Inc.*, 187 N.E.3d 267, 272 (Ind. Ct. App. 2022), *trans. denied*. In the absence of any duty, no negligence or liability can be based upon the alleged breach. *Id*. The parties do not dispute that Tolbert was a business

invitee of Redbones. Indiana courts have repeatedly stated that a landowner "must exercise reasonable care for the invitee's protection while the invitee is on the premises" and that this duty includes taking "reasonable precautions to protect invitees from foreseeable criminal attacks." *Rogers v. Martin*, 63 N.E.3d 316, 320, 326 (Ind. 2016). Foreseeability is the "critical inquiry" in determining whether this duty extends to the facts of a particular scenario. *Id.* at 323.

[13]   In addressing the issue of whether a particular act was foreseeable, triggering a duty of a landowner to an invitee, the court undertakes a "general analysis of the broad type of plaintiff and harm involved" without regard to the facts of the actual occurrence and assesses "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 391-92 (Ind. 2016). The court considers the general class of persons to which the plaintiff belonged and "whether the harm suffered was of a kind normally expected." *Rogers*, 63 N.E.3d at 325. Our supreme court has clarified that, in evaluating the broad classes of plaintiff and type of harm for purposes of a *Goodwin/Rogers* analysis, "a key factor is whether the landowners knew or had reason to know about any present and specific circumstances that would cause a reasonable person to recognize the probability or likelihood of imminent harm." *Cavanaugh's Sports Bar & Eatery, Ltd. v. Porterfield*, 140 N.E.3d 837, 840 (Ind. 2020); *see also Singh v. Singh*, 155 N.E.3d 1197, 1208 (Ind. Ct. App. 2020) (acknowledging that in applying the *Goodwin/Rogers* framework, "an examination of particular facts is necessary to fully resolve the question of

duty at this stage and to properly apply *Cavanaugh's* required 'foreseeability as a component of duty' analysis"). "If landowners had reason to know of any imminent harm, that harm was, as a matter of law foreseeable in the duty context." *Cavanaugh's*, 140 N.E.3d at 841. Courts applying the *Goodwin/Rogers* framework have found that a duty exists "only when landowners had this contemporaneous knowledge." *Id*. Requiring that criminal acts are foreseeable reflects the fact that a landowner's duty to protect an invitee is not without limit, as some harms are so unforeseeable that a landowner does not have a duty to protect invitees against them. *Rogers*, 63 N.E.3d at 324. Our supreme court has recognized that "courts must have a gatekeeping function available to them so that landowners do not become 'the insurers of their invitees' safety.'" *Id*. (quoting *Delta Tau Delta v. Johnson*, 712 N.E.2d 968, 971 (Ind. 1999)).

[14] In *Cavanaugh's*, Porterfield and a friend were out on the town and stopped at Cavanaugh's, a bar which was crowded but calm when they arrived. *Id*. at 838. The two stayed for several hours, speaking with the bartenders and having no disputes with anyone in the bar before closing time at 3:00 a.m. *Id*. As Porterfield and his friend exited the bar into the parking lot along with the other customers, a fight broke out. *Id*. Porterfield was injured in the fight and was rendered permanently blind. *Id*. Porterfield sued the bar for negligence, and the bar moved for summary judgment, arguing that it was not responsible for the unforeseeable criminal acts of third parties. *Id*. at 839. The trial court denied the bar summary judgment, and, on appeal, this court upheld that ruling. *Id*. On transfer, after undertaking an examination of cases issued since

the *Goodwin/Rogers* decisions, the *Cavanaugh's* court reversed, holding that "Cavanaugh's had no reason to foresee a bar patron blinding another during a sudden parking lot fight" and that Porterfield had not shown that the bar "knew or should have known about likely looming harm[.]" *Id*. at 843. The court observed that the fight had occurred suddenly and without warning, where Porterfield and his friend had been in the bar without incident for hours and had shown no animosity towards any other customers. *Id*. The court contrasted these facts with those of *Hamilton v. Steak 'n Shake Operations, Inc.*, 92 N.E.3d 1166, 1173 (Ind. Ct. App. 2018), *trans. denied*, wherein this court found that a landowner had a duty because a fight preceded by an escalating thirty-minute encounter between two specific factions that was witnessed by employees was foreseeable, and with *Certa v. Steak 'n Shake Operations, Inc.*, 102 N.E.3d 336, 340-41 (Ind. Ct. App. 2018), *trans. denied*, wherein we held that a fight was foreseeable when the landowner knew that patrons had a verbal altercation and was aware of the potential for the escalation of the conflict. *Id*. at 843-44. The *Cavanaugh's* court also found that the bar had no reason to think that their customers that evening "were particularly suited to committing the specific criminal acts they perpetrated[,]" contrasting Porterfield's case with that of *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38, 42-43 (Ind. Ct. App. 2019), *trans. denied*, wherein this court found a fight was foreseeable where the

landowner/bar knew that a patron who had been removed from the bar was unaccepting of that fact and was in a fighting mood. *Id*. at 844.[2]

[15] We likewise conclude that Redbones did not owe Tolbert a duty to protect him from Ross' punch which was unforeseeable. The general class of plaintiffs to which Tolbert belonged is a bar patron, and the general harm he suffered was serious head injuries. Although a bar can be the site of rowdy behavior, we do not believe that bar owners routinely contemplate that their patrons will punch each other, causing serious head injuries. While it may happen at times, it is not the norm. That being established, we conclude that the Tolberts did not designate evidence that Redbones "knew or had reason to know about any present and specific circumstances that would cause a reasonable person to recognize the probability or likelihood of imminent harm" sufficient to find that a duty existed. *Id.* at 840. While Graber was behind the bar of this relatively small establishment at the time of the fight, there was no designated evidence that Graber was listening to the yelling between Tolbert and Ross or that she saw the shoving that preceded Ross' punch. One witness characterized the bar as "loud", a fact that the Tolberts do not refute with any designated evidence. (Appellants' App. Vol. II, p.98). As in *Cavanaugh's*, prior to the fight, the

---

[2]On January 9, 2024, after the Tolberts filed their appellants' brief but before Redbones filed its appellee's brief and the Tolberts filed their reply, our supreme court issued *Pennington v. Memorial Hospital of South Bend, Inc.*, 223 N.E.3d 1086, 1097 (Ind. 2024), in which it discussed the test for duty applicable to cases such as this one stemming from activities on a landowner's premises unrelated to the premises' condition. The *Pennington* court restated the *Goodwin/Rogers* test wherein a court evaluates the broad types of plaintiff and harm. *Id*. The court emphasized that this was to be done without addressing the specific facts of the occurrence. *Id*. The *Pennington* court did not address *Cavanaugh's*. *Id*.

combatants here were together for a significant period of time inside the defendant's establishment without incident, as Ross and Tolbert were in Redbones for thirty minutes to an hour without any tensions between themselves or other patrons. *Id*. at 843. No threats were exchanged between the two men prior to the punch. While estimates varied among the various other patrons who were there that night, the estimate most favorable to the Tolberts was that the entire incident from Ross' first comment to the punch took less than five minutes, a significantly shorter period than the thirty-minute escalating conflict which contributed to our conclusion in *Hamilton* that the fight in that case was foreseeable. *Hamilton*, 92 N.E.3d at 1173-74. In addition, this was not a scenario wherein Graber had any notice that either Ross or Tolbert was particularly "suited" for fighting or were in a fighting mood that evening. *See Cavanaugh's*, 140 N.E.3d at 844 (distinguishing *Buddy & Pals III, Inc.*).

[16] The Tolberts insist that we must infer that Redbones knew or had reason to know of the imminent threat of a fight from evidence that Graber knew Tolbert was intoxicated, knew that customers can become aggressive when consuming alcohol, and knew she should keep an eye on extremely intoxicated patrons. However, none of this evidence supports a finding of knowledge of "present and specific" circumstances that would cause a reasonable person to recognize the likelihood of "imminent harm". *Id*. at 840. In addition, the Tolberts do not support with any legal authority their contention that the fact that *Doyle* might have been aware of facts that led her to conclude that there would be a fight is

sufficient for us to conclude that *Graber* knew or should have known that a fight was imminent, and we are aware of none. Neither can we credit the Tolberts' argument that Wilcher's discovery responses support the existence of the requisite knowledge here. Her assumption that Graber must have heard the verbal interaction between Ross and Tolbert is just that–an assumption. There is no designated evidence that Graber told Wilcher that she had heard the verbal exchanges, that Graber was actually three feet away from the men when the verbal back-and-forth occurred, or that the physical layout of the bar precluded Graber from being more than three feet away from all the customers seated at the bar. We also disagree with the Tolberts that we must construe the description of the events that Wilcher included in her interrogatory responses as establishing that Graber had personally witnessed all of those events, simply because Graber had recited the events to Wilcher. Our standard of review requires us to construe all evidence in favor of the Tolberts. *See Pfenning*, 947 N.E.2d at 397. However, construing evidence in favor of the non-moving party does not mean creating facts where none exist. Wilcher did not testify that Graber told her that she witnessed all of the events preceding Ross' punch. Absent any evidence that Graber actually witnessed the events she described to Wilcher, we cannot construe the facts in the manner the Tolberts propose.

[17] The Tolberts also argue that the law is unclear "whether a proprietor's contention that it was only aware of the circumstances giving rise to a likelihood of imminent harm for a short duration speaks to the element of duty and constitutes a question of law for the court or speaks to the element of

breach and constitutes a question of fact for the jury[.]" (Appellants' Br. p. 23). The Tolberts contend that the duration of a landowner's knowledge of imminent danger is relevant only to the issue of breach. However, our review is de novo, and we have concluded that no evidence was designated supporting the requisite knowledge by Redbones for even a short duration. Therefore, we do not address this argument other than to observe that in *Hamilton* we relied in part upon the fact that the escalating tensions between two groups in the restaurant were observed by the defendant's employees for thirty minutes in concluding that the defendant owed a duty of care to the plaintiff. *Hamilton*, 92 N.E.3d at 1173. Accordingly, we do not disturb the trial court's summary judgments.

## CONCLUSION

[18] Based on the foregoing, we hold that no genuine issues of material fact exist as to whether Redbones owed Tolbert a duty of care to support its premises liability claims.

[19] Affirmed.

Brown, J. and Foley, J. concur

ATTORNEY FOR APPELLANTS

Gabriel A. Hawkins
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
R. Jeffrey Lowe
Kightlinger & Gray, LLP
New Albany, Indiana