FILED

Apr 30 2019, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Christopher D. Cody
Georgianna Q. Tutwiler
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

A. Leon Sarkisian
Sarkisian Law Offices
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cavanaugh's Sports Bar & Eatery, Ltd., <br> *Appellant-Defendant,* <br><br> v. <br><br> Eric Porterfield, <br> *Appellee-Plaintiff* | April 30, 2019 <br><br> Court of Appeals Case No. 18A-CT-1814 <br><br> Interlocutory Appeal from the Lake Superior Court <br><br> The Honorable Bruce D. Parent, Judge <br><br> Trial Court Cause No. 45D04-0710-CT-288 |

**Crone, Judge.**

## Case Summary

[1] Shortly after closing time, several patrons of Cavanaugh's Sports Bar & Eatery, Ltd. ("Cavanaugh's"), became involved in an altercation in Cavanaugh's parking lot, and patron Eric Porterfield was injured. Porterfield filed a personal injury action, claiming that Cavanaugh's was negligent in failing to take

reasonable care for his safety against criminal attacks in its parking lot. In this interlocutory appeal, Cavanaugh's challenges the denial of its motion for summary judgment. Finding that Cavanaugh's failed to establish as a matter of law that it did not owe Porterfield a duty to protect him from criminal activity in its parking lot, we affirm the denial of summary judgment.

## Facts and Procedural History

[2] The facts most favorable to Porterfield as the nonmoving party are as follows. At 3:00 a.m. on Sunday, December 10, 2006, Cavanaugh's closed for the night. At the time, the bar was crowded, and Cavanaugh's employees directed the patrons to the exits. One of those patrons, Porterfield, had been at Cavanaugh's with his friend Steven McPherson. Porterfield did not consume any alcohol, but McPherson did. When they reached Cavanaugh's parking lot, McPherson made a comment to a female patron, to which her boyfriend and his companions, also patrons, took umbrage. Porterfield turned and saw McPherson surrounded by the boyfriend and his friends. An altercation ensued, and Porterfield suffered a serious eye injury.

[3] Porterfield filed a personal injury action against Cavanaugh's, claiming that Cavanaugh's was negligent in failing to take reasonable care for his safety as an invitee/patron. Several years later, Cavanaugh's filed a motion for summary judgment accompanied by designated materials, claiming that as a matter of law it owed no duty to protect Porterfield.

[4] Porterfield designated several exhibits in opposition to summary judgment. Plaintiff's Exhibits 2 through 6 comprise reports of five police runs to Cavanaugh's during the eleven months preceding the current incident. All the reports involve incidents of reported fisticuffs outside Cavanaugh's shortly after closing time. Exhibit 7 includes excerpts from the deposition of Schererville Police Department Corporal Michael A. Vode, who testified that each police run record sets out regularly recorded and conducted activities of his department. Ind. Evidence Rule 803(8)(A). Two days before the summary judgment hearing, Cavanaugh's filed a motion to strike, claiming that the police reports contained inadmissible hearsay. The court did not rule on the motion at that time.

[5] The trial court conducted a hearing and issued an order denying Cavanaugh's summary judgment motion. As part of its order, the trial court stated that it did not consider the police run reports in making its decision and found Cavanaugh's motion to strike moot. This interlocutory appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

[6] Cavanaugh's claims that the trial court erred in denying its motion for summary judgment. We review a court's ruling on a summary judgment motion de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated to the trial court during the summary judgment

stage. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied* (2019).

[7] Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C). The moving party bears the onerous burden of affirmatively negating an opponent's claim. *Hughley*, 15 N.E.3d at 1003. Then, if "the moving party satisfies this burden through evidence designated to the trial court, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Biedron*, 106 N.E.3d at 1089 (quoting *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*).

[8] In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the nonmoving party. *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*. "Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The party that lost in the trial court bears the burden of persuading us that the trial court erred. *Biedron*, 106 N.E.3d at 1089.

[9]     Porterfield's action against Cavanaugh's is a negligence action. To prevail on a negligence claim, the plaintiff must demonstrate "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin*, 62 N.E.3d at 386 (quoting *King. v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 402 (Ind. Ct. App. 1992), *trans. denied* (1993).

[10]    Cavanaugh's maintains that it owed no duty as a matter of law to protect Porterfield against an after-hours criminal assault in its parking lot. "Proprietors owe a duty to their business invitees to use reasonable care to protect them from injury caused by other patrons and guests on their premises." *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1052 (Ind. 2003). This includes protecting invitees from reasonably foreseeable criminal acts. *Id.* at 1053. In fact, "[w]here a premises liability claim is based on activities on the land [rather than a condition of the land], foreseeability is the critical inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances at issue." *Certa v. Steak 'n Shake Operations Inc.*, 102 N.E.3d 336, 340 (Ind. Ct. App. 2018) (quoting *Rogers v. Martin*, 63 N.E.3d 316, 325 (Ind. 2016)), *trans. denied*. The issue of "whether a duty exists is a question of law for the court to decide." *Goodwin*, 62 N.E.3d at 389. "[A]s a component of duty, foreseeability must be determined by the court[.]" *Id.* at 390.

[11] "[F]or purposes of determining whether an act is foreseeable in the context of duty we assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Goodwin*, 62 N.E.3d at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). This involves a "more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Id*. at 393 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied* (1999)). The *Goodwin* analysis acknowledges the well-established public policy that proprietors are not "insurers of their patrons' safety." *Id*. at 394.

[12] Cavanaugh's relies on our supreme court's decision in *Goodwin* as support for its argument that it had no duty to protect Porterfield against the harm suffered. In *Goodwin*, one bar patron thought he overheard another patron making a derogatory remark about his wife. 62 N.E.3d at 385. In his anger, he pulled out a handgun and fired at the other patron, striking him and his two companions. *Id*. The *Goodwin* court acknowledged that "although bars can often set the stage for rowdy behavior," bar owners do not "routinely contemplate that one bar patron might suddenly shoot another." *Id*. at 393-94. As such, the *Goodwin* court held "that a shooting inside a neighborhood bar is not foreseeable as a matter of law." *Id*. at 394.

[13] *Goodwin* is similar to this case in some respects. Both cases involve the same broad type of plaintiff, a bar patron/invitee. Both *Goodwin* and this case involve harm related to an activity on the land, a criminal attack. Nevertheless,

in analyzing foreseeability, i.e., the probability or likelihood of the criminal attack, we must look at the nature of the attack. *Goodwin* involved the sudden shooting of bar patrons by another patron inside the bar. This case involves a fistfight between bar patrons in the parking lot just after closing. We believe that the distinction between a shooting and a fistfight is pivotal when examining foreseeability within the context of duty. *See Certa*, 102 N.E.3d at 341 (even in the broader context of determining duty, "what the landowner knew or had reason to know is a pivotal consideration in determining foreseeability[.]").

[14]     Cavanaugh's correctly distinguishes this case from those in which there was designated evidence of mounting tensions between groups of patrons during their time *inside* the bar/restaurant. *See, e.g.*, *Hamilton v. Steak 'n Shake Operations Inc.*, 92 N.E.3d 1166, 1167 (Ind. Ct. App. 2018) (reversing summary judgment for restaurant on issue of duty where restaurant employees observed escalating tensions between two groups of patrons and did not intervene or contact security or police, and plaintiff was shot inside restaurant), *trans. denied*. Here, the tensions began and rapidly escalated after the patrons were *outside* the building just after Cavanaugh's had closed. In this sense, this case is more akin to *Certa*, where a physical altercation in the parking lot escalated to the point where one patron eventually struck another patron with her vehicle. 102 N.E.3d at 337-38. However, in *Certa*, a witness came inside and informed restaurant personnel about the first altercation. *Id*. Another panel of this Court reversed summary judgment for the restaurant, finding that the restaurant had a duty to take steps to avoid further violence. *Id*.

[15] In contrast, here, no evidence was designated to indicate that Cavanaugh's had express notice concerning tensions between Porterfield and the perpetrators. Nonetheless, the designated evidence shows that the altercation occurred immediately after the Saturday night/Sunday morning crowd had been herded out of Cavanaugh's at its 3:00 a.m. closing time. *See* Appellant's App. Vol. 2 at 67 (designated excerpt from Porterfield's deposition describing the scene moments before altercation as "a lot of people going out" into parking lot as Cavanaugh's personnel sought to clear the building). From what we can tell, an exchange of words quickly escalated to physical violence. Cavanaugh's designated expert characterized the incident as "an instantaneous and unforeseeable event because the actions occurred after the parties left Cavanaugh's." *Id*. at 127. To the extent that this reasoning suggests that incidents beginning outside the four corners of the building fall outside the scope of the proprietor's duty to patrons, we find it overly simplistic.

[16] We believe that parking lot fistfights at closing time are generally within the type of "rowdy behavior" that bar owners should contemplate, *Goodwin*, 62 N.E.3d at 393-94, and that, in particular, Cavanaugh's history of reported incidents gave it reason to contemplate further such incidents in its own parking lot. To say that a bar owner's duty to protect its patrons extends only to herding them through the exits at closing time is to essentially immunize the bar owner for violence that ensues between patrons immediately thereafter in its parking lot. We do not believe that the *Goodwin* court intended so broad a sweep of the pendulum, especially where the bar has a documented history of

similar incidents on its grounds. This is not to say that Cavanaugh's breached its duty to Porterfield; that will be a determination for the trier of fact once presented with evidence of the detailed circumstances of this case. We simply conclude that Cavanaugh's has failed to establish as a matter of law that it owed no duty to protect Porterfield. Accordingly, we affirm the trial court's denial of Cavanaugh's motion for summary judgment.

[17] Affirmed.

Vaidik, C.J., and Mathias, J., concur.