**FILED**

Feb 28 2019, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Andrew Lucas
Martz and Lucas, LLC
Valparaiso, Indiana

Benjamin D. Fryman
Schwerd Fryman & Torrenga, LLP
Valparaiso, Indiana

ATTORNEYS FOR APPELLEES

J. Thomas Vetne
Janet G. Horvath
Jones Obenchain, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Rose *as Special Administrator of the Estate of Rachelle L. Godfread, deceased*, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Martin's Super Markets L.L.C., Martin's Super Markets of Elkhart East L.L.C., Martin's Super Markets of Elkhart L.L.C., and Martin's Super Markets Inc., <br><br> *Appellees-Defendants.* | February 28, 2019 <br><br> Court of Appeals Case No. 18A-CT-1654 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Steven L. Hostetler, Judge <br><br> Trial Court Cause No. 71D07-1601-CT-15 |

**Robb, Judge.**

# Case Summary and Issue

[1] Rachelle Godfread was killed when a man began shooting inside a Martin's Super Market (the "Store") in Elkhart, Indiana. Anthony Rose, as special administrator of Godfread's estate (the "Estate"), sued the Store[1] for negligence. The parties filed cross motions for summary judgment. The trial court entered final judgment granting the Store's motion for summary judgment and denying the Estate's. The Estate appeals, raising two issues for our review that we consolidate and restate as one: whether the trial court erred in granting summary judgment to the Store on the issue of duty. Concluding the Store, as a matter of law, did not have a duty to Godfread either before or after the shooting began, we affirm.

# Facts and Procedural History[2]

[2] In the late evening of January 15, 2014, Shawn Bair entered the Store and proceeded to walk around without a basket or a cart. Bair retrieved only a single bottle of soda but he did stop to ask two Store employees where another item was located. He primarily talked or texted on his phone as he walked the

---

[1] The complaint named Martin's Super Markets L.L.C., Martin's Super Markets of Elkhart East L.L.C., Martin's Super Markets of Elkhart L.L.C., and Martin's Super Markets Inc., as defendants.

[2] The Estate's appendix includes a complete transcript of the summary judgment hearing which is not necessary and is in fact, precluded by the Appellate Rules. *See* Ind. Appellate Rule 50(F) ("Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix.").

aisles. Such behavior was not unusual for Bair, who had visited the Store on several other occasions.

[3] Approximately forty minutes after his arrival, Bair pulled a gun from beneath his coat and shot and killed Krystal Dikes, a Store employee, as she stocked shelves in aisle 3. Jodi Beaver, another Store employee, came to investigate the commotion and found Dikes on the floor. As Beaver fled toward the front of the store, Bair shot at her but missed. Bair continued walking the store, stopping at the end of aisle 17. Godfread was at the opposite end of aisle 17 with her back to Bair. Bair shot her in the back and she fell to the ground. As Godfread tried to sit up, Bair walked to her and shot her in the head at point-blank range, killing her. Sixty-four seconds had elapsed from the first shot.

[4] Dan Zimmer, a Store employee working security/loss prevention that night, was at the Store's entrance when he heard the first shot. As he ran toward the sound, Beaver rounded a corner running toward him, yelling, "He's shooting[!]" Appellant's Corrected Appendix, Volume 2 at 159. Zimmer turned back, ushered everyone at the front of the store outside, and called 911. Police arrived within two minutes and forty-three seconds of Bair's first shot. Bair was shot and killed by police roughly five minutes after he had begun shooting.

[5] The Estate filed this negligence action against the Store on January 13, 2016, alleging the shooting was foreseeable and that the Store had a duty to take action to protect Godfread after the shooting began. In March 2018, the Estate

filed a motion for summary judgment along with its designation of evidence, seeking a determination that the Store had a duty to protect Godfread as a matter of law because an active shooter situation was foreseeable. The Estate designated evidence that in September 2012, the Store's corporate office had circulated to store managers, assistant store managers, closing managers, and security officers a memo titled "Active Shooter Protocol" that was drafted by its head of security and human resources department. The memo stated:

> Attached you will find a fact sheet, a couple of laminated pocket cards and a DVD on Active Shooter Protocol. Please review this material with your assistant store manager, all closing managers and anyone working security. Please have each person sign the bottom of this memo verifying they have reviewed the material.

> We hope this is information you will never need to use, but given current events across the country, much that you see on the news, we want to make these materials available to you. This is good knowledge for all of us to have in our work and personal lives as we visit public establishments.

*Id.* at 119. The fact sheet, pocket cards, and DVD themselves were not among the evidence designated by the Estate. The Estate also designated the deposition of Zimmer and John Kimmey, who was the closing manager the night of the shooting. Zimmer stated that the Store did not provide him any training for an active shooter situation and that he had not seen the pocket cards or DVD distributed with the September 2012 memo. Kimmey also stated that he had never seen the pocket cards or DVD and that on the date of the shooting, he was not familiar with the term "active shooter." Kimmey testified

at his deposition that to his knowledge, no announcements were made in-store about the situation as it unfolded. Kimmey encountered Bair in an aisle of the store after Godfread was shot, and Bair had his gun pointed at him when police entered and shot Bair.

[6] In April, the Store filed its own motion for summary judgment arguing that the shooting was unforeseeable and therefore it did not owe Godfread a duty as a matter of law. After hearing argument on the parties' respective motions, the trial court issued its order denying the Estate's motion for summary judgment and granting the Store's:

> When presented with a set of circumstances so clearly analogous to those of *Goodwin* [*v. Yeakle's Sports Bar & Grill*, 62 N.E.3d 384, 394 (Ind. 2016)], a trial court has an absolute and important obligation to follow established precedent. As a sudden shooting inside a neighborhood bar is not foreseeable as a matter of law, it must be held that a sudden shooting inside a supermarket is similarly not foreseeable as a matter of law.

> The shootings that occurred on that unfortunate evening of January 15, 2014, were terrible and tragic. However, based on the controlling precedent, the Court has no choice but to rule that, as a matter of law, [the Store] owned [sic] no duty to protect Ms. Godfread from being shot. [The Store's] Summary Judgment Motion must therefore be granted, and [the Estate's] Motion for Summary Judgment must be denied.

> * * *

> The Court hereby grants the Summary Judgment Motion filed by [the Store], and denies [the Estate's] Summary Judgment

> Motion. As the summary judgment granted in favor of [the Store] resolves all of the claims asserted in the Complaint, and there being no just reason for delay, this Order constitutes a final judgment of this Court.

Appealed Order at 7. The Estate now appeals.

# Discussion and Decision

## I. Standard of Review

When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enterps., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

Our review is limited to those facts designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). On appeal, the non-moving party carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley*, 15 N.E.3d at 1003. A grant of summary judgment will be affirmed if it is sustainable upon any theory

supported by the designated evidence. *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015).

[9] The fact that the parties have filed cross motions for summary judgment does not alter our standard of review, as we consider each motion independently to determine whether the moving party is entitled to judgment as a matter of law. *Berkshire Hathaway Homestate Ins. Co. v. Basham*, 113 N.E.3d 630, 633 (Ind. Ct. App. 2018). Finally, although the trial court stated it was "not making findings of fact in deciding the motions," Appealed Order at 2, the trial court nonetheless recited an extensive factual background for the case and engaged in a lengthy analysis and discussion leading to its decision, *see id.* at 2-3. A trial court's order such as this offers insight into the rationale for the judgment and facilitates appellate review but is not binding on this court. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018), *trans. denied*.

## II. Summary Judgment

[10] To prevail on the negligence claim, the Estate must show: 1) the Store owed a duty to Godfread; 2) the Store breached that duty by allowing its conduct to fall below the applicable standard of care; and 3) the Store's breach of duty proximately caused a compensable injury to Godfread. *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 84 (Ind. Ct. App. 2018), *trans. denied*. The element of duty is generally a question of law to be determined by the court, whereas the elements of breach and proximate cause generally present questions of fact to be

determined by the factfinder. *Id.* Thus, whether the Store owed a duty to Godfread is amenable to determination by summary judgment because it is a question of law. *Id.* at 85.

[11]  In its motion, the Estate contended "it was foreseeable that an active shooter situation would occur on the night in question and that [the Store's] direct actions [or inactions] further created a duty to protect [Godfread]." Appellant's Corrected App., Vol. 2 at 22. Specifically, the Estate argued that the Store contemplated an active shooter situation at least sixteen months before this incident when it issued its "Active Shooter Protocol" memo and therefore this shooting was foreseeable. *Id.* at 21. The Estate also argued that the Store's action "or lack of appropriate action" in the sixty-four seconds between the first shot in the store and the shot that killed Godfread created a duty to protect Godfread, pursuant to *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016). *Id.* at 23. In its cross-motion, the Store argued the shooting inside its store was not foreseeable as a matter of law, comparing this case to *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 392 (Ind. 2016). The Store further contends that once the shooting began, it had no additional duty to assist Godfread until it knew she had been injured, and by the time it knew of her injury, it was too late to help her.

[12]  Essentially, the parties' arguments raise two separate time frames and distinct sets of facts as relevant for determining whether the Store owed a duty to Godfread: first, whether the Store had a duty to anticipate the shooting and take reasonable precautions to protect Godfread from harm before the shooting

began, and second, whether the Store had a duty to protect Godfread after the shooting began. We address each particular situation in turn.

## A. Before the Shooting Began

The duty a landowner owes to an invitee is well-established by Indiana premises liability law: a landowner must exercise reasonable care for the invitee's protection while the invitee is on the premises. *Rogers*, 63 N.E.3d at 320. When a physical injury occurs as a result of a dangerous *condition* on the premises, the Restatement (Second) of Torts section 343 accurately describes the landowner-invitee duty.[3] *Id.* at 322-23. However, injuries can also occur due to dangerous *activities* on the premises unrelated to the premises' condition, and landowners owe their invitees the general duty of reasonable care under those circumstances, as well. *Id.* at 323. Specifically, landowners and business proprietors owe a duty to their business invitees to "use reasonable care to protect them from injury caused by other patrons and guests on their premises[.]" *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1052 (Ind. 2003). The "critical element" in deciding whether a duty should be extended to

---

[3] Restatement (Second) of Torts section 343 (1965) provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

a case in which an invitee's injury occurs due to some harmful activity on the premises is foreseeability. *Rogers*, 63 N.E.3d at 324.

[14] Foreseeability as a component of duty is evaluated differently than foreseeability in the context of proximate cause: whereas foreseeability for purposes of proximate cause requires an evaluation of the facts of the actual occurrence, foreseeability for purposes of duty is a threshold determination that requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the specific facts of the occurrence. *Cosgray v. French Lick Resort & Casino*, 102 N.E.3d 895, 900 (Ind. Ct. App. 2018). "[F]or purposes of determining whether an act is foreseeable in the context of duty we assess whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Goodwin,* 62 N.E.3d at 392 (quotation omitted).

[15] As the trial court noted, the facts of this case are similar to those in *Goodwin*; therefore, we begin our analysis with that case. There, one bar patron thought he overheard another patron make a disparaging remark about his wife. In anger, he pulled out a handgun and fired at the other patron, striking him and his two companions. All three survived and sued the bar for negligence, alleging the bar failed to provide security for its patrons, failed to search the patron for weapons, and failed to warn them that the patron was armed and dangerous. The bar filed a motion for summary judgment arguing the patron's acts were unforeseeable and the bar therefore had no duty to anticipate and prevent the patron's conduct. The trial court agreed and entered summary

judgment on the bar's motion. Noting this issue "has created confusion at every level of our judiciary[,]" the Court of Appeals reversed, declaring that "reasonable foreseeability is not part of the analysis with respect to the [b]ar's duty." 28 N.E.3d 310, 311 (Ind. Ct. App. 2015). Acknowledging that "[f]or a period of at least over the past two decades or so our case law has been less than perfectly lucid in explaining how a court determines whether a duty exists in the context of a negligence claim[,]"our supreme court granted transfer. 62 N.E.3d at 387.

[16] After discussing the previous analytical frameworks Indiana courts had used for determining whether a landowner owes an invitee a duty to take reasonable care to protect the invitee from foreseeable third-party criminal attacks, the court pivoted away from those formulations and set forth a new standard for determining the reasonable foreseeability of harm. The court first noted, as we have done above, *see supra* ¶¶ 13-14, that in these kinds of cases, foreseeability is a component of duty as well as a component of proximate cause. *Id.* at 389. However, whereas the foreseeability component of proximate cause requires an evaluation of the facts of the actual incident, the foreseeability component of duty "requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Id.* at 391 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied*). In other words, a court looks at foreseeability globally for the purpose of determining whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm suffered such that a duty—and thus

liability—may be imposed on the negligent party. *See id.* (quoting *Strahin v. Cleavenger*, 603 S.E.2d 197, 207 (W.Va. 2004)). Once a duty and a breach have been established, a jury looks at foreseeability narrowly to determine whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct. *See id.*

[17] With that framework in mind, the court turned to the facts of the case and, after reviewing the designated evidence, determined:

> The broad type of plaintiff here is a patron of a bar and the harm is the probability or likelihood of a criminal attack, namely: a shooting inside a bar. . . . [W]e conclude that although bars can often set the stage for rowdy behavior, we do not believe that bar owners routinely contemplate that one bar patron might suddenly shoot another. To be sure, we doubt there exists a neighborhood anywhere in this State which is entirely crime-free. Thus, in the broadest sense, all crimes anywhere are "foreseeable." But to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patron's safety which is contrary to the public policy of this state. Further such a blanket duty would abandon the notion of liability based on negligence and enter the realm of strict liability in tort which assumes no negligence of the actor, but chooses to impose liability anyway. We decline to impose such liability here. In sum we hold that a shooting inside a neighborhood bar is not foreseeable as a matter of law.

*Id.* at 393-94 (citations omitted); *see also Powell v. Stuber*, 89 N.E.3d 430, 434 (Ind. Ct. App. 2017) (holding no duty was owed by a bar to a patron where the broad type of harm was "the probability or likelihood of a criminal attack being extended when the victim confronts his assailants, placing himself at risk of

further injury"), *trans. denied*; *but see Buddy & Pals III, Inc. v. Falaschetti*, No. 18A-CT-1811 at *3 (Ind. Ct. App. Jan. 18, 2019) (holding bar did have a duty to protect a bar patron from being assaulted by another "pugnacious patron" who had been ejected from the bar for fighting, because the bar, "through its bouncers, knew that [the ejected patron] was a loose cannon who was not taking his ejection well and was in a fighting mood" and this is the type of rowdy behavior that bar owners do routinely contemplate, distinguishing *Goodwin*), *trans. pending*.

[18]    Applying the *Goodwin* analysis to this case, the broad type of plaintiff here is a customer in a grocery store and the broad type of harm is the probability or likelihood of being shot by a third person while in the store. The Estate urges us to consider the "Active Shooter Protocol" memo the Store sent to its managers over a year before this incident as evidence that it had, in fact, contemplated an active shooter incident and this incident was therefore foreseeable. In *Cosgray*, the court determined a resort had no duty to protect a hotel guest from a criminal attack by an unknown assailant while she was in her room with her door intentionally left unlocked and ajar. 102 N.E.3d at 901. The hotel guest had asked the court to consider an "ongoing history of assaults and batteries and a prior reported rape" and the specific safety measures and warnings in place at the resort in its analysis of whether there was a duty. *Id.* The court rejected this "inclination to incorporate the totality of the circumstances into our consideration of the duty element" given that *Goodwin* specifically rejected that test. *Id.; see also Goodwin*, 62 N.E.3d at 389 ("[W]e now

recognize that although the 'totality of the circumstances' test is useful in determining foreseeability in the context of proximate causation, it is inappropriate when analyzing foreseeability in the context of duty."). Similarly, factoring the memo into the equation here is akin to evaluating the totality of the circumstances. We, like the court in *Cosgray*, decline to do so.[4]

[19] Several cases have applied the *Goodwin* framework in situations where the landowner was aware of a threat of injury. In *Certa v. Steak 'n Shake Operations, Inc.*, 102 N.E.3d 336 (Ind. Ct. App. 2018), *trans. denied*, two groups of people butted heads outside a Steak 'n Shake restaurant, continued being antagonistic to each other inside the restaurant, and ultimately came to blows outside the restaurant, resulting in one person being run over by a car. The injured person sued Steak 'n Shake, which was granted summary judgment by the trial court. We identified the broad type of plaintiff as a restaurant patron and the broad type of harm as injury caused by a third party and, being "mindful that Steak 'n Shake did not have to know the precise harm that its customer would suffer, only that there was some probability or likelihood of harm that was serious enough to induce a reasonable person to take precautions to avoid it[,]" we reversed the trial court's grant of summary judgment because Steak 'n Shake's knowledge of events occurring on its premises gave rise to a duty to take reasonable steps to provide for the customer's safety. *Id.* at 341; *see also*

---

[4] We also note that holding otherwise—that is, that having a protocol to address dangerous situations automatically means the situation is foreseeable—would *discourage* landowners from having such a protocol and could possibly lead to greater harm as no one would be prepared to take appropriate action.

*Hamilton v. Steak 'n Shake Operations, Inc*, 92 N.E.3d 1166, 1167 (Ind. Ct. App. 2018) (reversing summary judgment for restaurant on issue of duty where despite restaurant employees observing escalating tensions between two groups of customers over a period of thirty minutes, they did not intervene or call security or police, and a customer was shot inside the restaurant), *trans. denied*.

[20] Here, the shooter was in the store for forty minutes before he drew his gun, but he did nothing during that time to draw attention to himself or betray his intentions. He interacted normally with store employees and aroused no suspicion based upon what he was wearing or what he was doing. Zimmer noted that the shooter had come into the store on several prior occasions and would walk around for extended periods of time, leaving without incident. Therefore, seeing him on the security cameras raised no alarms for Zimmer. Unlike the situations in *Certa*, *Hamilton*, and *Falaschetti*, the Store had no knowledge of events on its premises that would lead it to contemplate that a regular customer acting in his customary manner would suddenly pull out a gun and shoot at employees and other customers. If a bar, which is inherently an establishment that "can often set the stage for rowdy behavior," has no duty to a patron who was suddenly shot by another patron, *Goodwin*, 62 N.E.3d at 393, then it is difficult to see how a grocery store, which has no similar reputation for rowdiness or confrontation, could expect such harm to befall an invitee on its premises.

[21] As the court noted in *Goodwin*, all criminal activity is foreseeable to a certain degree, *see id.* at 394, and it is a sad reality of this day and age that a shooting

can occur anywhere at any time. But that does not mean that every store, yoga studio, and movie theatre is required to provide protection for its patrons at all times on the chance that a madman will choose to open fire in its public space, nor does it mean that proactively preparing for such a possibility in a broad way makes any given incident foreseeable. Thus, we agree with the trial court that although the shooting was "terrible and tragic[,]" Appealed Order at 7, as a matter of law, the Store had no duty to Godfread before the shooting began.

## B. After the Shooting Began

[22]    Next, the Estate claims that the Store's duty once the shooting began should be analyzed pursuant to a case decided the same day as *Goodwin*: *Rogers v. Martin*, 63 N.E.3d 316. In *Rogers*, the supreme court applied the *Goodwin* framework to a situation where two guests at a house party, Jerry Chambers and Paul Michalik, got into a fistfight with Brian Brothers, one of the hosts of the party, in the wee hours of the morning. Brothers woke Rachel Martin, his co-host, girlfriend, and the owner of the house, and asked for her help getting Chambers and Michalik to leave. Martin found Chambers with blood on his face and Michalik face down on the basement floor with his eyes closed. Because Michalik was breathing and had no visible injuries, Martin assumed he had passed out from drinking. Martin instructed Chambers to take Michalik to the hospital if he was concerned but did not call the police or dial 911 herself before going back to bed. Brothers and Chambers carried Michalik upstairs and soon after, police found Michalik dead on the front lawn. Michalik's estate and Chambers sued Martin, claiming, in part, that she was negligent because she

failed to render aid to Michalik after she saw him unconscious on the floor. The trial court granted Martin's motion for summary judgment and on appeal, this court concluded summary judgment was improper, holding Martin owed Michalik a duty to render aid and questions of fact remained as to whether she had breached that duty. *See Rogers v. Martin*, 48 N.E.3d 318, 323-25 (Ind. Ct. App. 2015). Our supreme court granted Martin's petition for transfer.

[23] On transfer, the court separately addressed the "two particular situations" raised by this factual scenario. 63 N.E.3d at 326. As to the first situation— whether Martin owed a duty to take reasonable precautions to protect Michalik from the harm that occurred during the fight—the court held that it was not reasonably foreseeable to a homeowner that a party co-host would fight with and injure an invited guest and therefore, the homeowner was not required to take precautions to avoid this "unpredictable situation." *Id.* As to the second situation—whether Martin owed a duty to protect Michalik from the exacerbation of his injuries after finding him unconscious in her home—the court held that "[h]omeowners should reasonably expect that a house-party guest who is injured on the premises could suffer from an exacerbation of those injuries" and therefore, homeowners have a duty to render assistance once they have knowledge of the injury. *Id.* at 327. Accordingly, the court held that summary judgment for Martin was improper on the negligence claim, while noting the ultimate question of whether Martin breached that duty and whether Michalik's death was a natural and probable cause of Martin's conduct were questions of fact to be decided by the fact-finder. *Id.*

[24] Relying on *Rogers*, the Estate argues that the law "distinguishes between the initial, sudden, criminal act and what occurs after the landowner knows of the threat." Corrected Brief of Appellant at 15. In making its argument, the Estate points in part to "admissions" by the Store that it owed Godfread a duty for the sixty-four seconds between the first shot and Godfread's death. *Id.* at 16. Indeed, the Store acknowledged in its Memorandum in Support of Summary Judgment that it had an obligation "to call for help once it knew she'd been injured on the property." Appellant's Corrected App., Vol. 2 at 146. However, this is not an admission that it had a duty in this case for the sixty-four seconds after the shooting began, as it is qualified by the phrase "*once it knew* she'd been injured[.]" *Id.* (emphasis added). Instead, this is merely restating a general point the Store made earlier in its Memorandum when it observed, "For *Rogers* to apply, [it] must've had actual knowledge that Godfread was injured and then did nothing. . . . [The Store], in fact, had no idea Godfread had been shot until *after* the police arrived and ended the nightmare." *Id.*

[25] The duty in *Rogers* was not premised on Martin's anticipation or knowledge of the *fight*, but on her knowledge of an *injury* caused by the fight. She then had a corresponding duty to protect against exacerbation of that injury in her home. *See* 63 N.E.3d at 327 ("Martin did, however, have a duty to protect Michalik *after she found him lying unconscious*") (emphasis added). As stated in *Hamilton*, Martin's "knowledge of the guest's injury was crucial to assessing foreseeability, and in turn, to the determination that [she] owed a duty." 92 N.E.3d at 1172. Here, the Store had knowledge for a brief period of time that a person in the

store was shooting a gun but had no knowledge of Godfread's injury until it was too late to offer her assistance. With no knowledge of Godfread's injury, the Store had no duty to take action to prevent exacerbation of those injuries.

## Conclusion

[26] Ultimately, it was not reasonably foreseeable for a grocery store to expect death by gunfire to befall a customer and therefore, the Store had no duty to Godfread prior to the shooting. And, because the Store did not have knowledge of Godfread's injury in time to offer her assistance, the Store had no duty to protect her from exacerbation of her injuries. The trial court appropriately granted summary judgment to the Store and therefore, the trial court's judgment is affirmed.

[27] Affirmed.

Riley, J., and Kirsch, J., concur.