



FILED

Mar 03 2020, 11:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-CT-88

## Cavanaugh's Sports Bar & Eatery, Ltd.
*Appellant (Defendant below)*

—v—

## Eric Porterfield
*Appellee (Plaintiff below)*

---

Argued: October 22, 2019 | Decided: March 3, 2020

Appeal from the Lake County Superior Court
No. 45D04-0710-CT-288
The Honorable Bruce D. Parent, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 18A-CT-1814

---

**Opinion by Justice Massa**

Chief Justice Rush and Justice Slaughter concur.
Justice Goff dissents with separate opinion in which Justice David joins.

**Massa, Justice.**

Eric Porterfield sued Cavanaugh's Sports Bar & Eatery for negligence after a sudden fight in the bar's parking lot at closing time left him grievously injured. Cavanaugh's moved for summary judgment, arguing that it owed Porterfield no duty because the incident was unforeseeable. After the trial court denied the motion, our Court of Appeals, in an interlocutory appeal, affirmed.

Landowners must "take reasonable precautions to protect invitees from foreseeable criminal attacks." *Rogers v. Martin*, 63 N.E.3d 316, 326 (Ind. 2016) (citation omitted). Ascertaining whether this duty extends to "the criminal act at issue," *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 389 (Ind. 2016), in a "particular scenario," *Rogers*, 63 N.E.3d at 320, hinges on the foreseeability of the attack, requiring "a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm," *id.* at 325. When considering these categories, courts should determine whether the defendant knew or had reason to know of any present and specific circumstance that would cause a reasonable person to recognize the probability or likelihood of imminent harm.

Under the criminal act at issue in this particular scenario, Cavanaugh's owed no duty to protect its patron from the sudden parking lot brawl when no evidence shows that Cavanaugh's knew the fight was impending. Because we continue to decline to impose a comprehensive "duty on proprietors to afford protection to their patrons" from unpredictable criminal attacks, *Goodwin*, 62 N.E.3d at 394, we reverse and remand.

## Facts and Procedural History

One December night, Eric Porterfield and a friend visited two nightspots, stopping at a strip club before heading to Cavanaugh's Sports Bar & Eatery. In the crowded but calm Cavanaugh's, the two men socialized with bartenders and had no disputes with anyone in the bar. At the 3 a.m. closing time, the men, along with the rest of the bar's clientele,

left the bar for the parking lot. Halfway across the lot, they fought with some other departing customers. The details of the incident are unclear, but Porterfield sustained terrible injuries that rendered him permanently blind.

Porterfield sued the bar for negligence, alleging that Cavanaugh's breached its duty to protect him when the bar was "located in an area of criminal activity," was "known, or should have been known by [Cavanaugh's], to be frequented by persons with a propensity to engage in criminal conduct," and "has experienced criminal activity for years prior to the attack on Porterfield." Appellant's App. Vol. II, pp. 55–56. Cavanaugh's moved for summary judgment, maintaining that it owed no duty to Porterfield because it "cannot be held responsible for the unforeseeable criminal acts" of third parties. *Id.*, p.46. Porterfield, however, argued that the fray was foreseeable because police were called to Cavanaugh's five times in the year preceding the clash to respond to fights "in the parking area, between 3:00 a.m. and 3:30 a.m." *Id.*, p.116.

Although it "did not consider" Porterfield's evidence supporting that the bar was historically dangerous, the trial court nevertheless denied summary judgment. *Id.*, p.33. To the trial court, "there simply were not enough agreed material facts presented" for it to decide whether Cavanaugh's owed Porterfield a duty. *Id.*, p.32. On interlocutory appeal, Cavanaugh's continued to argue that it had no duty to protect Porterfield because it "did not see any taunting, arguing, or other contentious communication between Porterfield and any other patrons while he was in their establishment." Appellant's Br. at 16–17. But the Court of Appeals affirmed, holding that "parking lot fistfights at closing time are generally within the type of 'rowdy behavior' that bar owners should contemplate." *Cavanaugh's Sports Bar & Eatery, Ltd. v. Porterfield*, 123 N.E.3d 170, 174 (Ind. Ct. App. 2019) (quoting *Goodwin*, 62 N.E.3d at 393–94), *vacated*. Indeed, the panel went on, the "history of reported incidents" at Cavanaugh's "gave it reason to contemplate further such incidents in its own parking lot." *Id.*

Cavanaugh's sought transfer, which we now grant. *See* Ind. App. R. 57(H)(2) ("The Court of Appeals has entered a decision in conflict with a decision of the Supreme Court on an important issue."); (H)(5) (Supreme

Court "precedent is . . . in need of clarification . . . in some specific respect.").

# Standard of Review

Cavanaugh's contends the trial court erred by denying it summary judgment. At this stage, we use "the same standard as the trial court: summary judgment is appropriate only when the designated evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Rogers*, 63 N.E.3d at 320 (citing Ind. Trial Rule 56(C)). To be sure, the parties contest the specifics of the parking-lot encounter. But, as discussed below, that disagreement does not affect the threshold legal question of whether Cavanaugh's owed Porterfield any duty. Because the designated evidence shows no genuine issue of material fact, we must determine whether Cavanaugh's was entitled to judgment as a matter of law, construing all facts and reasonable inferences drawn from those facts in favor of Porterfield as the nonmovant. *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 912–13 (Ind. 2017). We review this legal question de novo, affording no deference to the trial court's resolution. *Id.*

# Discussion and Decision

Porterfield, under our premises liability jurisprudence, accuses Cavanaugh's of breaching its duty "to take reasonable precautions to protect [him] from foreseeable criminal attacks." *Rogers*, 63 N.E.3d at 326. To determine whether this well-established duty extends to "the criminal act at issue," *Goodwin*, 62 N.E.3d at 389, in a "particular scenario," *Rogers*, 63 N.E.3d at 326, the "critical inquiry" is to answer whether the criminal attack was foreseeable, *id.* at 323–24. But foreseeability in this context—as a component of duty—is evaluated differently than foreseeability in proximate cause determinations: while the latter foreseeability analysis requires a factfinder to evaluate the specific facts from the case, the former "involves a lesser inquiry," requiring a court, as a threshold legal matter, to evaluate "the broad type of plaintiff and harm involved, without regard

to the facts of the actual occurrence." *Goodwin*, 62 N.E.3d at 393 (citation omitted); *see generally id.* at 392 (rejecting a prior-used totality test because it "focuses on the particular facts of the case rather than a broader inquiry" and "is ill-suited to determine foreseeability in the context of duty"). By focusing "on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected," *Rogers*, 63 N.E.3d at 325, courts must "assess whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it," not merely that harm is "sufficiently likely," *Goodwin*, 62 N.E.3d at 392 (quotation omitted). "[B]ecause almost any outcome is possible and can be foreseen," *id.*, this ensures "that landowners do not become the insurers of their invitees' safety," *Rogers*, 63 N.E.3d at 324 (quotation omitted).

Just over three years ago, this Court adopted and applied these principles in companion cases handed down on the same day. First, because bar owners don't "routinely contemplate that one bar patron might suddenly shoot another," we held that a bar owed no duty to a patron who was unexpectedly shot by another. *Goodwin*, 62 N.E.3d at 394. Expressly rejecting the injured patron's request to consider prior police reports and evidence of the character of the neighborhood, this Court emphasized that foreseeability in the duty context is not to be "premised on the facts of [a] particular case." *Id.* at 392, 393. This historical evidence—while appropriate to consider when assessing foreseeability at the proximate-cause stage—was inappropriate to contemplate in the "lesser inquiry" concerning duty. *Id.* at 393. Ultimately, no present knowledge informed the landowner that any sudden harm was impending, and the restaurant didn't owe the patron a duty to protect him from the "criminal act at issue." *Id.* at 394, 389.

And second, a homeowner owed not duty to protect a party guest suddenly attacked by a co-host because hosts don't "routinely physically fight guests whom they have invited." *Rogers*, 63 N.E.3d at 326. "Although house parties can often set the stage for raucous behavior[,] . . . to require a homeowner to take precautions to avoid this unpredictable situation would essentially make the homeowner an insurer for all social guests' safety." *Id.* No duty to protect from the unexpected fight was owed to the

house-party guest. But when the homeowner discovered that guest listless in her basement, she owed a duty "to protect him from the exacerbation of an injury occurring in her home" because she should have reasonably expected that his injuries could worsen. *Id.* at 327. Unlike the other two circumstances we examined that day, "reasonable persons would recognize a duty" when the host in this "particular scenario" knew the guest was injured. *Id.* at 327, 320.

When evaluating the broad class of plaintiff and broad type of harm in these cases, we acknowledged a key factor is whether the landowners knew or had reason to know about any present and specific circumstances that would cause a reasonable person to recognize the probability or likelihood of imminent harm. *See Goodwin*, 62 N.E.3d at 385 (noting that, just before the barroom shooting, all the parties were separately "socializing" at "the small establishment"); *Rogers*, 63 N.E.3d at 319 (remarking that the homeowner observed that her co-host was, before attacking a house-party guest, "just 'being normal,' and it was not obvious to her that he had 'a buzz going'" from drinking alcohol); *id.* (observing that, before the guest was found dead outside her home, the homeowner saw him "lying motionless on the basement floor with his eyes closed"). If landowners had reason to know of any imminent harm, that harm was, as a matter of law, foreseeable in the duty context. *See, e.g., id.* at 327 (holding that it was foreseeable "that a house-party guest who is injured on the premises could suffer from an exacerbation of those injuries"). In the years since *Goodwin* and *Rogers*, courts have thoughtfully applied this framework, finding duty only when landowners had this contemporaneous knowledge.[1]

---

[1] The dissent asserts that the Court "raises the bar of the question of foreseeability in the context of duty by requiring **contemporaneous** evidence of **imminent** harm." *Post*, at 1. Not so, and not always. Instead, we recognize that this circumstance—current knowledge of imminent harm—has driven the outcome of Court of Appeals cases applying our precedent over the past three years. Concurrent knowledge of imminent harm is a **sufficient**, not necessary, condition of foreseeability in the duty context.

When an angry restaurant customer brandished a gun and shot another patron, for example, a duty to protect arose when a late-night restaurant's staff presently knew of increasing hostilities between two groups. *Hamilton v. Steak 'n Shake Operations Inc.*, 92 N.E.3d 1166 (Ind. Ct. App. 2018), *trans. denied*. Before the shooting, a waitress at the restaurant watched as a member of one group, immediately upon entering, began taunting a member of the other group about his perceived sexual orientation. *Id.* at 1167. The waitress saw these taunts turn to threats, witnessing the group hounding the targeted man to fight and blocking "the door so no one could leave." *Id.* She then saw the initiator run outside and pound on the windows, yelling for the target of his ridicule "to come outside and fight him." *Id.* She told "the cook/manager of the confrontation between the groups," which "continued to intensify as the two groups made their way toward the cash register." *Id.* at 1167, 1168. With both the waitress and cook/manager watching, a fight broke out near the register, with the instigator drawing a gun and shooting a member of the other group "point blank in the face." *Id.* at 1168. Just as "the landowner's knowledge that the house-party guest had been injured gave rise to a duty to take precautions to protect the injured guest from exacerbation of those injuries" in *Rogers*, the restaurant's knowledge of the "escalating thirty-minute encounter that included verbal threats and taunts, blocking of the exit, and pounding on windows in an effort to incite a physical altercation" gave it "a duty to take reasonable steps to provide for patron safety." *Id.* at 1173.

When another patron at a different location of the same restaurant threw his car into reverse and purposefully backed over another customer while driving, the Court of Appeals again found a duty because of the restaurant's contemporaneous knowledge of escalating tensions between groups. *Certa v. Steak 'n Shake Operations Inc.*, 102 N.E.3d 336 (Ind. Ct. App. 2018), *trans. denied*. Before the collision, a waitress saw a heated encounter between two groups of intoxicated people spill into the restaurant from outside. *Id.* at 341. The waitress, who served both groups, was quickly told by a relative in one of the parties that she feared the two sides would fight. *Id.* The waitress then saw the groups exchange "dirty looks and finger pointing while inside the restaurant." *Id.* The waitress told "her

manager that the two groups might be trouble," with the customer who eventually drove over the other later telling her that he "would retaliate" if the dispute spilled back into the parking lot. *Id.* Because "what the landowner knew or had reason to know is a pivotal consideration in determining foreseeability," the restaurant's knowledge of the escalating tensions between the particular groups "gave rise to a duty to take reasonable steps to provide for" the injured patron's safety. *Id.* at 341.

When a drunken bar patron smashed another customer's jaw in a bar's front parking lot, our Court of Appeals again found a duty owed when the bar had reason to recognize the probability or likelihood of imminent harm. *Buddy & Pals III, Inc. v. Falaschetti*, 118 N.E.3d 38 (Ind. Ct. App. 2019), *trans. denied*. Before the offending punch landed, the bar's bouncers knew the patron had imbibed "numerous alcoholic beverages over a three-hour period." *Id.* at 40. After he consumed these drinks, bouncers saw the man shoved to the ground after challenging another man he saw "talking to his fiancée." *Id.* A bouncer then put the man "in a chokehold," from which he "forcibly tried to pull away" to confront the man who had shoved him. *Id.* This bouncer, while clutching the man, heard him describe himself as "a danger" to the bouncer and "everyone in his way." *Id.* Bouncers then ejected him through a back door, heaving him to the pavement. *Id.* After a bouncer "punched him in the eye and slammed the door" in his face as he tried to re-enter, the bouncers discussed that he "might try to re-enter through the front entrance." *Id.* Again, because "'what the landowner knew or had reason to know'" plays an important role in determining foreseeability at this preliminary stage, the bar "had a duty to take precautions to protect its other patrons . . . from further violent attacks . . . [by a] loose cannon who . . . was not taking his ejection well and was in a fighting mood." *Id.* at 42–43 (quoting *Certa*, 102 N.E.3d at 341).

And when a college student sexually assaulted his inebriated sophomore party guest in his fraternity house, the Southern District found a duty owed when the "fraternity knew or should have known of [ ] prior allegations" of sexual assault against the member. *Doe v. Delta Tau Delta Beta Alpha Chapter*, No. 1:16-cv-1480, 2018 WL 3375016, at *4 (S.D. Ind. July 11, 2018). A year-and-a-half before this assault, another sophomore's

friend told four of this member's fraternity brothers that he had sexually assaulted her during a similar alcohol-fueled event while she was "blacked out or possibly unconscious." *Id.* at *2. These fraternity brothers were bound, by their fraternity's code of conduct, to "confront members of this Fraternity who" violated the code, which compelled respecting "the dignity of all persons" and barred the "sexual[ ] abuse [of] any human being." *Id.* at *3. Because "a defendant's actual knowledge is an appropriate consideration in determining foreseeability and the existence of any duty owed," the fraternity's awareness, through its members, of the accusations of sexual assault against this particular member gave it a duty to protect the "invitee to a social fraternity event" from his assault at the party. *Id.* at *4. Like the restaurants and bar discussed above, the fraternity had reason to recognize the probability or likelihood of looming harm when it hosted another spirited gathering and left the very member it knew was accused of sexual assault unhindered to assault another drunken party guest.

But without notice of present and specific circumstances that would cause a reasonable person to recognize the risk of an imminent criminal act, our Court of Appeals has consistently held since *Goodwin* and *Rogers*—until now—that landowners cannot foresee these sudden attacks.

A bar had no reason to expect thieves in its parking lot crushing a patron with their getaway car as he dashed after them. *Powell v. Stuber*, 89 N.E.3d 430, 434 (Ind. Ct. App. 2017), *trans. denied*. Before this chase, without the bar's knowledge, the thieves had punched the patron, taken his keys and wallet, fled, returned to the scene, and tried to steal his car. *Id.* at 431. Without knowing of any impending harm, the bar could not foresee that "a criminal attack in [its] parking lot would be extended when the victim pursue[d] the assailants." *Id.* at 434. The bar owed the patron no duty to protect him against this unforeseeable criminal attack. *Id.*

A wrestling promotor had no reason to anticipate an "unknown assailant," without warning, attacking a spectator outside a rented building at a county fairgrounds when she left during a match to retrieve medication from her car. *Jones v. Wilson*, 81 N.E.3d 688, 692, 694–95 (Ind. Ct. App. 2017), *trans. not sought*. When the promoter did not know of any

waiting threat, the "random criminal attack . . . inflicted on [the spectator] was not normally to be expected, and thus not foreseeable" *Id.* at 694–95. The promoter owed the spectator no duty to protect her against this unforeseeable criminal attack. *Id.* at 695.

A hotel had no reason to predict one of its worker's visitors unexpectedly raping a hotel guest after she covertly propped open her door and fell asleep on her bed. *Cosgray v. French Lick Resort & Casino*, 102 N.E.3d 895, 901 (Ind. Ct. App. 2018), *trans. not sought*. "[E]xamining the broad type of plaintiff and the broad type of harm, without consideration of the actual facts," the Court of Appeals found the attack "in a room left intentionally unlocked was not normally to be expected, and thus not foreseeable" when the hotel had no notice of any present danger to its guest when she secretly left her hotel room door ajar. *Id.* at 900–01. The hotel owed the guest no duty to protect her against this unforeseeable criminal attack. *Id.*

A supermarket had no reason to envision a shooter with a concealed weapon, after spending forty minutes perusing the store, suddenly opening fire and killing a customer. *Rose v. Martin's Super Markets L.L.C.*, 120 N.E.3d 234, 244 (Ind. Ct. App. 2019), *trans. denied*. Despite the "sad reality . . . that a shooting can occur anywhere at any time, . . . it was not reasonably foreseeable for a grocery store to expect death by gunfire to befall a customer" when it had no warning of the coming tragedy. *Id.* at 242, 244. And, unlike in *Rogers*—where a homeowner had a duty to help a guest once she knew about his injury—it was unforeseeable that the critically injured customer could suffer further harm after being shot when the store didn't know about the "injury in time to offer her assistance." *Id.* at 244. The store owed the customer no duty to protect her from exacerbation of her injuries and no duty to protect her from this unforeseeable criminal attack. *Id.*

And Cavanaugh's had no reason to foresee a bar patron blinding another during a sudden parking lot fight. Unlike the cases where courts have found a duty when a landowner knew or should have known about likely looming harm, Porterfield does not show that Cavanaugh's had any reason to believe the fight would occur. The skirmish occurred suddenly

and without warning: for hours before the fracas, Porterfield and his friend socialized with bartenders and had no animosity with any other customers. Indeed, no evidence suggests any tension in the bar before the fight. *Cf. Hamilton*, 92 N.E.3d at 1173 (holding fight foreseeable when restaurant knew of "[a]n escalating thirty-minute encounter" between specific groups); *Certa*, 102 N.E.3d at 340–41 (holding fight foreseeable when restaurant knew "patrons had engaged in a verbal altercation and was aware of the potential for escalation of the conflict"). And the bar had no reason to think that Porterfield, his assailants, or any of their affiliates were particularly suited to committing the specific criminal acts they perpetrated. *Cf. Buddy & Pals*, 118 N.E.3d at 43 (holding fight foreseeable when bar knew patron "was not taking his ejection [for fighting] well and was in a fighting mood"); *Delta Tau Delta*, 2018 WL 3375016, at *4 (holding sexual assault foreseeable when "fraternity knew or should have known of the prior allegations" of sexual assault against particular member).

By pointing to police runs made to the bar during the year before the quarrel, Porterfield improperly substitutes evidence of the bar's past raucousness for contemporaneous knowledge of imminent harm. We repeat, this type of historical evidence, while "appropriate in evaluating foreseeability in the context of proximate cause," should play no role when we evaluate "foreseeability as a component of duty." *Goodwin*, 62 N.E.3d at 393. Considering prior reports of the bar's unruliness shifts our common law jurisprudence back into a recently supplanted totality analysis and risks fabricating a duty when harm is merely "sufficiently likely." *Id.* at 392 (quotation omitted). A landowner's present knowledge, however, more conclusively elevates the knowledge of risk to "some probability or likelihood of harm," *id.*, allowing courts to continue to find a duty when "reasonable persons would recognize it and agree that it exists," *Rogers*, 63 N.E.3d at 325.

Although businesses must exercise reasonable care to protect their patrons from foreseeable harms, they aren't "the insurers of their invitees' safety." *Id.* at 324 (quotation omitted). Imposing a comprehensive "duty on proprietors to afford protection to their patrons" from sudden and unexpected criminal acts like the one committed in this "particular scenario," however, does just that. *Goodwin*, 62 N.E.3d at 394. Because we

will not "abandon the notion of liability based on negligence and enter the realm of strict liability," *id.*, Cavanaugh's owed Porterfield no duty to protect him against this unforeseeable criminal attack.

# Conclusion

Landowners must "take reasonable precautions to protect invitees from foreseeable criminal attacks." *Rogers*, 63 N.E.3d at 326. To determine whether this duty, as a matter of law, extends to the criminal act at issue in a particular scenario, the critical inquiry is to determine whether the attack was foreseeable, considering the broad type of plaintiff, the broad type of harm, and whether the landowner had reason to expect any imminent harm. Because we hold that the criminal attack at issue here was unforeseeable, the duty of Cavanaugh's to protect Porterfield did not extend to this particular scenario. We reverse and remand with instructions for the trial court to enter summary judgment for Cavanaugh's.

Rush, C.J., and Slaughter, J., concur.
Goff, J., dissents with separate opinion in which Justice David joins.

ATTORNEYS FOR APPELLANT
Christopher D. Cody
Georgianna Q. Tutwiler
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

Michael E. Tolbert
Tolbert & Tolbert, LLC
Gary, Indiana

ATTORNEYS FOR APPELLEE
A. Leon Sarkisian
Sarkisian Law Offices
Merrillville, Indiana

ATTORNEY FOR *AMICUS CURIAE*

INDIANA TRIAL LAWYERS ASSOCIATION

Gabriel A. Hawkins

Cohen & Malad, LLP

Indianapolis, Indiana

**Goff, J., dissenting.**

I respectfully dissent from the Court's opinion granting summary judgment to Cavanaugh's. While I appreciate the majority's thorough review of recent caselaw concerning foreseeability in the context of duty, I disagree with it in two primary respects. First, the majority adds new requirements to our foreseeability inquiry, elevating the standard to impose a duty. Second, the majority focuses on the particular facts of this case, contrary to the standard provided by precedent. Both problems cause issues on their own, but, more broadly, they combine to impede the right to trial. I would resolve this case differently—focusing on the general, common-sense nature of this foreseeability inquiry—and find that Cavanaugh's owed Porterfield a duty.

## I. The majority's approach elevates the standard for foreseeability as a part of duty and improperly focuses on the facts of the case, impeding the right to a trial.

The majority raises the bar of the question of foreseeability in the context of duty by requiring **contemporaneous** evidence of **imminent** harm. *See ante*, at 6, 9. Foreseeability in this context "is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm." *Rogers v. Martin*, 63 N.E.3d 316, 325 (Ind. 2016). We've called this determination "a lesser inquiry" than that in the context of proximate cause. *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 390 (Ind. 2016) (citation omitted). Contemporaneous evidence—such as escalating tensions—may inform the lesser, threshold determination of foreseeability, but nothing about

this determination requires that evidence.[1]  In other words, the presence of contemporaneous evidence can help show that a criminal act was foreseeable, but the absence of that evidence should not be the determining factor to conclude that a criminal act was unforeseeable.  Although the majority says it agrees with this point, *ante*, at 6 n.1, it backs away from the point when it relies on the alleged absence of contemporaneous evidence to find this fistfight unforeseeable, *id.* at 10–11.  More important than the problem with adding the contemporaneousness requirement, though, is the fact that requiring an imminent harm conflicts with the basic inquiry we undertake at this step.  Our task is to determine whether a harm is foreseeable.  *Rogers*, 63 N.E.3d at 326; *Goodwin*, 62 N.E.3d at 388.  But the majority's new requirement that a harm be imminent involves a tougher standard because foreseeable harms are not always imminent.  For example, it's foreseeable that land in a floodplain will flood, but such a flood may not be imminent during a drought.  Ultimately, the majority's new requirements of contemporaneous evidence and imminent harm elevate the bar for foreseeability in the context of duty, making a lesser inquiry into something greater.  And while I agree with the majority that businesses should not become

---

[1] In conducting this foreseeability analysis, we consider the defendant's knowledge, *see Rogers*, 63 N.E.3d at 327, so it makes sense to consider (but not require) contemporaneous evidence of observed escalation, *see, e.g., Certa v. Steak 'n Shake Operations, Inc.*, 102 N.E.3d 336, 341 (Ind. Ct. App. 2018), *trans. denied*.  It makes less sense to exclude from consideration, in defining the general categories of plaintiff and harm, prior similar incidents, which show the defendant's knowledge in the same way that contemporaneous evidence does.  But the majority and at least one panel of our Court of Appeals interpret *Goodwin* and *Rogers* as prohibiting consideration of prior similar incidents.  *Ante*, at 11; *Cosgray v. French Lick Resort & Casino*, 102 N.E.3d 895, 901 (Ind. Ct. App. 2018), *trans. not sought*.  However, I'm not as sure that *Goodwin* and *Rogers* meant to throw the baby out with the bathwater.  The rejected totality-of-the-circumstances test "considers 'all of the circumstances surrounding an event.'"  *Rogers*, 63 N.E.3d at 325 (citation omitted).  If by rejecting this test we rejected everything it included, we'd have nothing left to consider.  Thus, something must remain, which we've said is the defendant's knowledge.  *See id.* at 327.  Chief Judge Magnus-Stinson, in an opinion cited by the majority, found that an alleged prior similar incident could have shown the defendant's knowledge, and I agree.  *Doe v. Delta Tau Delta Beta Alpha Chapter*, No. 1:16-cv-1480-JMS-DML, 2018 WL 3375016, at *4 (S.D. Ind. July 11, 2018).  This conclusion aligns with common sense: if the same thing happens thirty days in a row, no one will be surprised when it happens on the thirty-first day.  *See Rogers*, 63 N.E.3d at 325 (citation omitted) ("[C]ourts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.").

insurers of their invitees' safety, its new requirements take us too far toward the harm at the other end of the spectrum: providing blanket immunity to businesses for foreseeable harms that befall their invitees. *See Hamilton v. Steak 'n Shake Operations, Inc.*, 92 N.E.3d 1166, 1172 (Ind. Ct. App. 2018) (recognizing the goal of avoiding both ends of the spectrum), *trans. denied*.

The majority also relies on the particular facts of this case rather than conducting the more general analysis our precedent requires. When we look at the broad types of plaintiff and harm as part of the foreseeability inquiry, we do so "without addressing the specific facts of the occurrence." *Rogers*, 63 N.E.3d at 325. *See also Goodwin*, 62 N.E.3d at 390–91. Contrary to this instruction, the majority focuses on the facts underlying this case. The majority emphasizes the lack of tension in the bar, noting that "for hours before the fracas, Porterfield and his friend socialized with bartenders and had no animosity with any other customers." *Ante*, at 11. And it concludes that nothing indicated that the people involved in the fight "were particularly suited to committing the specific criminal acts they perpetrated." *Id.* In the end, the majority's focus on the specific facts of this case does what the majority sets out to avoid: it "shifts our common law jurisprudence back into a recently supplanted totality analysis." *Id.*[2]

In addition to the specific issues already discussed, the majority opinion more broadly impedes the right to a trial. *See* Ind. Const. art. 1, §

---

[2] That being said, if we do consider the facts, they weigh against granting Cavanaugh's summary judgment. As the majority notes, at this stage we must "constru[e] all facts and reasonable inferences drawn from those facts in favor of Porterfield as the nonmovant." *Ante*, at 4 (citing *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 912–13 (Ind. 2017)). Taken in that light, the designated evidence shows that, over the course of twenty or thirty minutes when Cavanaugh's had security personnel at their exit doors, a conversation between Andrea Acevedo and Porterfield's friend, Steven McPherson, escalated first into a shouting match between McPherson and Porterfield and a group of men (with the men aggressively approaching McPherson and encircling him) and continued to escalate until the fight broke out. Even under the heightened standard applied by the majority, "reasonable persons would recognize [a duty on Cavanaugh's part] and agree that it exits." *Rogers*, 63 N.E.3d at 325 (citation omitted). Thus, summary judgment is inappropriate.

20 ("In all civil cases, the right of trial by jury shall remain inviolate."). By raising the bar for finding a duty, the majority's opinion will lead to summary judgments in close cases, impeding Hoosiers' right to a trial. And by focusing on the facts in determining whether a duty exists, the majority takes from the factfinder at trial the ability to consider and weigh facts. In *Hughley v. State*, we recognized the importance of trial when we said, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." 15 N.E.3d 1000, 1004 (Ind. 2014). Today, however, the majority fails to do the same.

## II. Based on our general, common-sense foreseeability inquiry, I would find a fight like this one to be foreseeable.

I would conduct a different analysis than the majority and reach the opposite result. We've said that "a landowner has a duty to take reasonable precautions to protect invitees from foreseeable criminal attacks," and the extension of this duty to a situation like that presented in this case turns on the foreseeability of the criminal act. *Rogers*, 63 N.E.3d at 324, 326. "[T]his foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence." *Id.* at 325 (citing *Goodwin*, 62 N.E.3d at 388–89). Foreseeability in this context is meant to be a common-sense inquiry. *See id.* (citations omitted) ("[C]ourts will find a duty where, in general, reasonable persons would recognize it and agree that it exists."); *Goodwin*, 62 N.E.3d at 392 (citation omitted) (stating that this foreseeability analysis asks "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it").

With these instructions in mind, I would find that the broad type of plaintiff here is a bar patron, and the broad type of harm here is injury resulting from a fistfight at the bar's early morning closing time. While "a shooting inside a neighborhood bar is not foreseeable as a matter of law,"

*Goodwin*, 62 N.E.3d at 394, a closing-time fistfight is. We've already recognized the common-sense notion that "bars can often set the stage for rowdy behavior." *Id.* at 393. Indeed, the fact that bouncers exist and the commonplace depictions of barfights in popular culture, to name a couple examples, prove the point. Similarly, I believe that most people would agree that the combination of such rowdy behavior, alcohol, and late hour (or early, depending on your perspective) sets the stage for potential disagreements and physical altercations. Said differently, few people would be surprised to learn that a run-of-the-mill fistfight broke out right after a bar closed at 3 a.m. I believe that reasonable people would recognize the unremarkable nature of a fistfight involving bar patrons at the bar's early morning closing time, and they would take precautions to avoid it. *See Rogers*, 63 N.E.3d at 325; *Goodwin*, 62 N.E.3d at 392. Thus, I would hold that Cavanaugh's owed a duty to protect Porterfield from this foreseeable fight, and I would affirm the trial court's denial of the summary judgment motion.

Such a holding is more limited than the majority and Cavanaugh's fear. This holding's precedential value would be limited to cases involving the same classes of plaintiff and harm identified here; it would not impose a duty on every bar in the state. And after a duty is found here, Porterfield would still have to prove the other elements of negligence—breach and proximate causation of a compensable injury—before Cavanaugh's could be held liable. *See Rogers*, 63 N.E.3d at 321; *Goodwin*, 62 N.E.3d at 386. Proving these elements would not be an easy task. To the contrary, when the facts are no longer viewed in Porterfield's favor and when Cavanaugh's presents evidence of its security practices and actions here, a jury could easily find that Cavanaugh's was not responsible for Porterfield's injuries. Simply put, allowing this case to proceed falls well short of imposing liability on Cavanaugh's or any other bar in the state.

For these reasons, I respectfully dissent.

David, J., joins.